## Theodore H. Hinchman et al. v. John A. Barns and Henry A. Bury.

*Legal notices: Place of publication.* The entire of a city, village or township,— all parts of it alike, and disregarding all inferior subdivisions,—within which a newspaper is published, is the "place of publication" within the meaning of the statutes, which require notices to be published in particular localities.

*Heard October 12. Decided October 13.*

Error to Wayne Circuit.

This was an action of *assumpsit,* brought by Theodore H. Hinchman, John M. Hinchman and Ford D. C. Hinchman against John A. Barns and Henry A. Bury. The latter was not served with process. The plaintiffs declared against the two defendants as partners. Barns defended on the ground that he was a special, and not a general, partner of Bury. The plaintiffs, on the contrary, affirming that by a

neglect to publish notice of the limited partnership, as required by the statute, in the same Senatorial District where the business was to be carried on, the partnership was in fact a general one. The business was to be carried on in the Second Senatorial District, and the notices were published in newspapers whose printing-offices were located in the First Senatorial District, all in the city of Detroit. The Circuit Judge charged the jury that the statute was complied with, in regard to the publication; their verdict was rendered for the defendant, and the judgment entered thereon, the plaintiff below brings into this Court by writ of error.

*S. Larned* and *F. A. Baker*, for plaintiffs in error.

*A. G. Boynton, E. E. Kane* and *Ashley Pond*, for defendants in error.

COOLEY, J.

The principal question in this case concerns the meaning of the statute which requires a notice of special partnership to be published in two newspapers in the Senatorial District within which the business is to be carried on, and makes the special partner liable as a general partner, if there shall be any failure to make the requisite publication.

The business in this case was to be carried on in the First ward of the city of Detroit, and a notice thereof in due form was published in two daily newspapers of that city. The offices of those papers, however, were in the Second ward of the city, which was in a different Senatorial District from that which embraced the First ward. If this publication was not sufficient, it is conceded that Barns is liable as a general partner, while if sufficient, he

is not responsible for the plaintiff's demand, unless made so on the ground of a change in the business of the concern, a point which will be referred to hereafter.

In endeavoring to ascertain what is meant in this statute by the publication of a newspaper, we have no difficulty in perceiving that it is not the mere printing thereof. Some other act is obviously essential to complete publication. The idea of publication includes the putting the paper in some form before the public. It has its inception with the printing, but it is only completed when the paper · passes from the hands of the publishers into the hands of the public, or of such public agencies as are appointed for the distribution. When a paper is distributed exclusively through the mail, it could not be said to be published until delivery is made at the post-office; and if the edition should be accidentally destroyed while on its way from the printing-office to the post, it is quite evident that the printer could not truthfully make affidavit that a legal notice which it contained had been published, nor could one against whom it contained a libelous article maintain an action on the ground that the publication of the libel was complete, notwithstanding no one had yet seen it. So if the paper is distributed through the agents of the proprietors, it is obvious, whatever may be the legal meaning of the term *publication,* that the act which it indicates is not complete until the paper reaches the hands of subscribers, or the place where it is to be deposited for their reception. If, therefore, we are to give to the word "published" in the statute the narrow meaning claimed for it on the part of the plaintiffs, and hold that it has reference to the particular spot or building where the publication becomes complete, we should be obliged, we think, to find that place at the post-office in the one case, or the dwelling of the subscriber in the other, rather than, as the plaintiffs

claim, at the office of the proprietor, where the steps preliminary to publication were taken. There can be no doubt, however, that this construction would be opposed to the common understanding of the people, and no one would insist upon it as correct.

Generally, where our statutes provide for the publication of notices, they have reference to the geographical divisions into counties, cities, townships and villages; and it is worthy of notice that this statute was passed when there was no division of counties into Senatorial Districts, so that a question like the present could not have been anticipated. Where a statute evidently has such reference,—as in the case of mortgage, execution and tax sales,—there is generally no doubt whatever that the Legislature intend the county, city, township or village, in which the office of publication is located. Within the meaning of these statutes it could not be held that a paper, printed and generally circulated in one county, was also published in the adjoining county because some of its numbers were distributed within it by the regular carriers. But it has never been claimed before, so far as we know, that any of our statutes, in referring to the publication of a newspaper, published in some particular city or township, have had regard to some particular place or building within the city or township as the place of publication, instead of treating the whole municipality as one locality for that purpose. There has never been any reason, as far as we are aware, for inquiring into the precise spot of first issue so narrowly; and if any statute requires it, the provision must be accidental rather than designed. Each of the Detroit papers is published, so far as is practicable, in every part of the city at the same time, and by the same agencies; and it would be a distinction without reason to hold that they are published in one ward of the city and not in the others.

The plaintiffs concede that the place of printing a paper is not necessarily to be regarded as the place of publication, if the issues are delivered to the publisher at another point for distribution; but we have no reason to suppose that the statute ever intended to take notice of any of these unimportant circumstances, when the public generally would be likely to be ignorant of them, and yet might find their interests seriously affected, if they were material, and without any good reason whatever. Statutes, upon which the public are to act, do not purposely lay traps of this character, and a construction that will have this effect is not to be adopted unless compelled. If it should be adopted, the question of the validity of a notice in some cases might require the courts to inquire, when a fire or other accident in one establishment required the proprietors to resort to the office and employ the agencies of a neighboring establishment to publish an issue, whether the office supplying the accommodation was within the same ward or not, so that the place of publication could be considered the same. We are clearly of opinion that no such inquiries are requisite; that within the meaning of this statute a city, village or township in which a paper is issued is its place of publication,—one part of it just as much as another, and that the statute does not design to take notice of inferior subdivisions, or to inquire at all into the circumstance of whether the proprietors printed their own paper or hired another to do so, or whether they made distribution through their own agents, or by selling their issues, or to regard at all so unimportant a circumstance as whether the office of the publishers is on one side of a street in ward One, or on the other side of the same street in ward Two, when in each case the manner of publication would be the same, the paper would reach the same persons, give the same notice of the matters it contained, and accomplish the same purposes.

The other question argued in the case is, whether a special partner becomes liable as a general partner by a change in the nature of the business without his knowledge. We do not concern ourselves with this question, because we do not think it appears that there was any evidence tending to show any such change.

The judgment must be affirmed with costs.

CAMPBELL, Ch. J. and GRAVES, J. concurred.

CHRISTIANCY, J. was not present on the argument of this case.