DANIEL W. PERKINS AND THOMAS SUMNER v. PHILIP KELLER AND ANTHONY ANCEL.

*Statutory foreclosure—Filing sheriff's deed—Change in name of paper pending publication of foreclosure notice.*

The neglect to file the sheriff's deed on statutory foreclosure within twenty days after the sale does not of itself invalidate the foreclosure, but extends the time for redemption by the period of the delay.

A change in the place of publication does not destroy the identity of the publication.

A change of name does not necessarily destroy identity so long as that to which the name pertains remains the same.

A statutory foreclosure is not invalidated by a change in the name of the newspaper in which the foreclosure advertisement is published, and by the removal of the publication office to another place in the same county, if the paper otherwise preserved its identity.

Case made from Bay. Submitted January 22. Decided February 11.

EJECTMENT. Plaintiffs recovered below.

*D. W. Perkins* for plaintiffs.

*Hatch & Cooley* for defendants. Identity of name does not determine the identity of the newspaper to which it pertains. *Scammon v. Chicago* 40 Ill. 146.

CAMPBELL, J. The defendants Keller and Ancel bring up this cause on case made, alleging errors which they claim prejudiced them in the court below.

Perkins and Sumner sued in ejectment, and defendants set up title under a mortgage foreclosure by advertisement. This was objected to as irregular on two grounds: *first,* that the deed on foreclosure was not filed in the register's office until twenty days after sale; and *second,* that the publication of notice was imperfect.

Upon the first point we think the objection is not well taken. We have held in *Lilly v. Gibbs* 39 Mich. 394, that the time of redemption in such a case does not begin to run until the deed is filed. In *Doyle v. Howard* 16 Mich. 261 and *Grover v. Fox* 36 Mich. 461 the delay was such as to destroy all the purposes of the statute. But it was suggested in the case of *Doyle v. Howard* that a brief delay, while it might subject the sheriff to a mandamus requiring him to perform his duty, ought not to entirely destroy the foreclosure. It does not seem to us reasonable to regard the delay of twenty days as of itself enough to subject the purchaser to any other loss than the extension of the right of redemption for that period.

The other question is more serious and is not without difficulty.

The statute under which the foreclosure was had requires notice to be published for twelve successive weeks, at least once in each week, " in a newspaper printed in the county where the premises included in the mortgage and intended to be sold, or some part of them, are situated, if there be one; and if no newspaper be printed in such county, then such notice shall be published in a paper published nearest thereto." Comp. L., § 6914.

By section 6917 any postponement is required to be published " in the newspaper in which the original advertisement was published," etc. And by section 6926 the affidavit of publication of notice is to be made " by the printer of the newspaper in which the same was

inserted, or by some person in his employ knowing the facts."

The notice of foreclosure in the present case was published long enough, but a change was made during the publication which was held by the court below to have destroyed its legal continuity. It was begun in a newspaper published at Wenona, opposite Bay City, called the Wenona *Herald*. Before it had been published twelve weeks the proprietors of the paper removed their establishment across the river to Bay City, and changed the name of the paper to the Bay City *Herald*. There was no other change made, and the Bay City *Herald* was kept up on the same forms and with the same material, and on the same subscription list, with no more difference in subscribers than arises from the occasional dropping of one and accession of another. No change was adopted in the make-up of the paper except in the change of heading. The notices which had been set up in Wenona were continued from the same type and forms, which were not broken up or distributed.

Inasmuch as there has been no change in the county of publication, it is not claimed that either paper (supposing them to be distinct) would not have been competent to publish a lawful notice. It is not claimed, on the other hand, that the statute will permit a publication to be begun in one paper and finished in another. The only question, therefore, is whether the Bay City *Herald* is the same paper as the Wenona *Herald*. And the inquiry is narrowed down to whether change of place and change of name destroy legal identity.

Change of place certainly does not. The same newspaper or magazine is often published at different times in different towns or cities, and in different places in the same city. Some of the leading reviews both in Great Britain and America have been published at different times in cities remote from each other and in different states and countries. No doubt such changes might be such as to destroy their competency to publish

some legal notices, but no one ever supposed they were
not in the general understanding, continuous enterprises.
The good will of such publications is sometimes their
most valuable property, and the chief value of that has
consisted in the reputation derived not from locality but
from management. Changes of ownership even do not
always make any serious difference in the popularly rec-
ognized identity any more than in corporations. It is
not easy to define in words precisely what makes the
identity of the Edinburgh *Review*, or of one of our Amer-
ican monthlies, but very few subscribers or readers are
curious to know the locality of the printing or publica-
tion office.

In *Hinchman v. Barns* 21 Mich. 556, where it was
insisted a special partnership had not been legally formed
because the newspapers in which notices were published
had their offices in a different ward and senatorial dis-
trict from the place of partnership business (the latter
being in the second senatorial district and the newspa-
pers being published in the first) it was held by this
court that inasmuch as both the business of the firm
and the newspaper offices were within the city of Detroit,
the notices were good, and the whole city might be
treated as the place of publication. It was there inti-
mated, though not decided, that when the Legislature
refers to a town, city or county as the place of publica-
tion, it does not forbid a change of place, or require
publication in any particular place within any of those
precincts. And reference was made to changes of loca-
tion from fire or accident or other cause as not chang-
ing the rights or identity of the concern. It would be
unreasonable and it could do no one any good to allow
accidents or removals of business stands to destroy sub-
stantial rights. It is not desirable to render mortgage
sales precarious beyond the necessary requirements of
the statutes. If this paper had been called the Bay
County *Herald*, it can hardly be seriously claimed that
a removal of its office a few rods, from Wenona into Bay
City, would have been more injurious than its removal

from one part of Bay City to another, or would have raised any suspicion of change of identity.

It seems to us that a change of name does not necessarily produce any destruction of identity, so long as there is no change in the enterprise itself. The name of a paper has the same significance as the name of a man or of a corporation. It is in each of those cases the primary legal means of identification. But men may have their names changed without prejudice to their rights or responsibilities, and so may corporations both public and private. The seat of government of this State and several of its cities and counties, as well as towns, have been changed in name and in boundaries, with no loss or change of individuality. If any difficulty is caused in determining such identity, it is a question of fact to be settled by proof. It certainly was possible in removing to Bay City, to create a substantially new journal, but we think it was equally possible to continue the old one. Had the place of publication been continued at Wenona, some change of name would have been likely, if not necessary, when Wenona ceased to be called Wenona, and became West Bay City. The continuation of the old name might have become a practical misnomer.

We think when the notice is shown to have been published continuously in the same county, by the same business firm, in the same printing establishment, from the same type and forms, and in a paper which is intended to be the same, and having the same readers, the *Herald* which was called the Wenona, and is now called the Bay City *Herald*, merely from its transfer of locality in the same vicinage, may properly be regarded as the same paper throughout. Since the argument our attention has been called to *Sage v. Central R. R. Co.* 99 U. S. 334, holding the same views.

The court below erred in ruling otherwise, and the judgment must be reversed with costs and a new trial granted.

The other Justices concurred.