[No. 3,839.]

## IN THE MATTER OF OPENING AND GRADING OF MARKET STREET.

TAXING POWER.—The taxing power, whether it be asserted in the form of general taxation, or of local assessment, cannot be upheld, when the purpose in view can be judicially seen to be other than public.

TAX UPON SPECIFIC PROPERTY.—A tax upon specific property to pay the expense of opening and grading a street, can be supported only upon the ground that the property taxed is benefited by the improvement.

POWER TO ASSESS LOTS ON A STREET.—Lots fronting on a street cannot be taxed by way of assessment to pay a person for grading done by him on the street some two or three years before, under an abortive contract made by him with the municipality.

IDEM.—The claim of such person, if he has one, is a claim affecting the public conscience, and must be satisfied through the Legislative power of appropriation out of the moneys of the State, or of the municipality.

APPEAL from the County Court, City and County of San Francisco.

By an Act approved April 2, 1870, the Board of Supervisors of the City and County of San Francisco was authorized and required to cause Market street, from Valencia street to Seventeenth street, to be opened and graded. The Act provided that wherever Market street, between said points, passed over land the private property of any person, the Board might condemn the same. The condemnation

was to be effected by having the City and County Attorney file a petition in the County Court, on behalf of the city and county, and against the owners of the land, praying for the condemnation. The Court or Judge was to hear the petition after notice given, and if the Court or Judge found that the land was necessary for opening the street, three commissioners were to be appointed to ascertain and assess compensation to be paid to the owners of property taken. The Commissioners were to report to the Court. The city and county was empowered, immediately upon filing the petition, to enter upon the land and let a contract for grading and improving. Upon the completion of the work, the said Board was to appoint three persons to assess the benefits to each parcel or lot of land within the limits aforesaid, received by the improvement. The Commissioners were also to determine the value of the work done upon Market street, by Peter Connolly, between said points, under a contract with the city and county made about the 8th day of May, 1867. They were also to assess the amount due for work done under the Act, together with the amount awarded as compensation to the owners of land, and the costs of the proceedings, upon the lots benefited within the district, in proportion to the benefit received by each. They were to report to the Board of Supervisors, and the Board might confirm or reject. Upon confirmation, the amount assessed upon each lot became a lien thereon, and was to be collected by the Tax Collector.

This was a proceeding in the County Court for the condemnation of the property under the first section of the Act. The petition was filed July 25, 1870. Upon the filing of their report with the Clerk of the County Court, objections were made to its confirmation by the owners of property. The County Court set aside the report, and ordered that no further proceedings be had in the premises, on the ground that no valid assessment could be made under the Act. The City and County of San Francisco appealed.

The other facts are stated in the opinion.

*W. C. Burnett*, City and County Attorney, and *Wm. Irvine*, for the Appellant.

In the rightful exercise of the taxing power the Legislature could (as it did do), provide for assessing the cost of the work performed by Connolly on the street, under the contract with the city, prior to the passage of the Act of April 2, 1870. (*Burr* v. *Blanding*, 13 Cal. 343, 350.)

*Williams & Thorton, Wm. Hayes, W. W. Cope, Jarboe & Harrison*, and *M. A. Edmonds*, for the Respondents.

The defendants are in a position to urge all constitutional objections to the acts under consideration. If the land surveyed as a roadway had never been legally condemned, it was still private property, and being such, the Legislature had no power to assess benefits upon the lots in the defined district, nor did it design so to do. This portion of the Act was based wholly upon the supposition of a legal condemnation. If there was no legal condemnation, no lots could possibly be benefited, for the roadway would still remain private property, subject to the control and dominion of the owners. (*Harbeck* v. *Connolly*, 11 O. St. 227; *Leslie* v. *St. Louis*, 47 Mo. 474; *Judson* v. *City of Bridgeport*, 25 Conn. 429; *Mayor* v. *Bouldin*, 23 Md. 372; *Mayor* v. *Eschback*, 18 Md. 276; *Lathrop* v. *Mills*, 19 Cal. 513; *Hahn* v. *Kelly*, 34 Cal. 391; *Williamson* v. *Berry*, 8 How. U. S. 540; *Brenham* v. *Mayor*, etc., 24 Cal. 585, 604; *Brenham* v. *Story*, 39 Cal. 179.)

By the Court, WALLACE, C. J.:

We will consider the case without reference to the question of practice made by the respondents.

1. Out of the moneys to be raised by means of the assessment in question, the claim of Connolly is first to be paid. The remainder in the hands of the City Treasurer is to be applied to the compensation of those whose lands have been taken for the roadway of the proposed extension of Market street.

If the payment of Connolly's claim be a purpose which is

seen to be private, and not public in its character, the assessment now in question must fail. The taxing power, whether it be executed in the form of general taxation or of local assessment, cannot be upheld, when the purpose in view can be judicially seen to be other than public. Again, the basis upon which an assessment, such as that now in controversy, is supported, is that of benefit derived to the property assessed, by reason of the making of an improvement at once local and public in its character, the amount assessed being, as observed by Mr. Justice BRONSON, " an equivalent or compensation for the enhanced value which the property of the person assessed has received for the improvement." (4 Hill R. 82.) 'Tis only because of the specific benefit received that specific property is taxed for a specific purpose. The assessment upon property is therefore " laid with reference to the benefit which such property is supposed to receive from the expenditure of the money." (*Taylor* v. *Palmer*, 31 Cal. 254.)

2. It is apparent that the payment of the Connolly claim is not a public purpose in the sense which will support the assessment here. The circumstances in which the claim originated do not very distinctly appear. It would seem, however, that the claim is for compensation for certain work done by Connolly in the year 1868, under an abortive contract, for the opening of this extension, theretofore made between himself and the anthorities of the city and county of San Francisco. It may be that the circumstances, when ascertained, would characterize his claim as one affecting the public conscience, and entitling the holder to payment from the appropriate fund, as was done in *Blanding* v. *Burr*, 13 Cal. 343; *Creighton* v. *Board of Supervisors*, 42 Cal. 446, and *Sinton* v. *Ashbury*, 41 Cal. 525. But, however this may be, Connolly, in the nature of things, could have had no special claim upon the conscience of those who now happen to own lots about to be benefited by the proposed extension. His claim, if a claim of a public character, constituted a public burden, common to the State at large, or perhaps to the municipality, in which and under a supposed contract with whose

authorities it originated, and was to be satisfied, if at all, through the legislative power of taxation and appropriation, as was done in the cases already referred to, and in others which need not be here enumerated. In this view, to compel the owners of these lots to pay the claim, would be, under the name of assessment, to tax them for a general public purpose, specifically and without regard to uniformity or the proportional value of property taxed prescribed by the Constitution.

Order affirmed.