[No. 6,002.]

## MAHONEY *v.* BRAVERMAN.

STREET ASSESSMENT — CONSTRUCTION OF STATUTE.— Under § 3 of the Act of April 1st, 1872, (Stat. 1871-2, p. 804) the Board of Supervisors of San Francisco had the power to order the construction of a sewer, or other street improvement, extending through two or more streets.

ID.—APPEAL.—In an action upon a street assessment, it appeared that an appeal had been taken from the assessment, which had been dismissed upon the report of the City and County Attorney; but it did not appear that any testimony was offered by the party appealing. *Held,* that this was consistent with the fact that the only matter urged on the appeal was a question of law, and did not show that the appeal was improperly dismissed.

ID.—CONTRACT—TIME—APPEAL.—*Held further,* in the same action, that the assessment was void, because the work was not completed within the time specified in the contract; and that it was not made valid by the appeal.

APPEAL from a judgment for the plaintiff, and from an order denying a new trial, in the Third District Court, City and County of San Francisco. McKEE, J.

The facts are stated in the opinion.

*Gunnison & Booth,* for Appellant.

*C. H. Parker,* for Respondent.

Department No. 2, THORNTON, J. :

This is an action to enforce an assessment for a street improvement. The improvement referred to is the construction of a cement-pipe sewer, with flushing-hole and cover, in Willow Avenue from Octavia to the center line of Gough Street, and in Gough Street from a point opposite the center line of Willow Avenue to Eddy Street, to connect with the sewer in the crossing of Gough and Eddy Streets. The Court gave judgment for plaintiff. The defendant moved for a new trial, which was denied, and this appeal is prosecuted from the judgment and order of the Court denying the new trial.

It is urged on behalf of the appellant that the Board of Supervisors had no authority to order the doing of the above-mentioned street work, for the reason that it included two distinct and separate streets in one and the same contract and assessment ; that the order for such work is illegal and void, having been made without authority of law.

The diagram which was in evidence, shows this condition of the streets : Willow Avenue runs perpendicularly to Gough Street, the course of the avenue being east and west, while that of Gough Street is north and south. Eddy Street is south of and parallel with Willow Avenue, the north line of the former being distant from the south side of the latter one hundred and twenty feet. Octavia Street is west of and parallel with Gough, and distant from it four hundred and twelve and a half feet. The work was to be done partly in Willow Avenue, and partly in Gough Street, which last, as we have seen, ran at right angles to the former—that is to say, the sewer referred to was to run from Octavia Street along Willow Avenue easterly to the center line of Gough Street, then turning south at right angles to run in a southerly direction along Gough Street so as to connect with the sewer in the crossing of Gough and Eddy Streets.

It is objected that the Board of Supervisors had no jurisdiction or power to order a sewer to be constructed in Willow Avenue and in Gough Street in one and the same award and contract, inasmuch as they were two separate streets. To sustain this objection we are referred to the Act of the Legislature of April

1st, 1872. (See Acts of 1871–2, p. 804.) By the third section of this act, the Board of Supervisors are authorized and empowered "to order *the whole or any portion*" of the streets, lanes, alleys, places, or courts described in the first and second sections of the act, graded or regraded to the official grade, planked or re-planked, paved or repaved, macadamized or remacadamized, piled or repiled, capped or recapped, and to order sidewalks, *sewers*, cesspools, manholes, culverts, curbing, and cross-walks to be constructed, and to order any other work to be done which shall be necessary to make and complete the *whole* or any portion of said streets, lanes, alleys, places, or courts, and they may order any of the said work to be improved."

No question is made but that the streets above named, Willow Avenue and Gough, in which the sewer was to be constructed, came within those described in the first and second sections of the act referred to. On the most cursory perusal of the sections cited, one must be struck with the broad and ample powers conferred by them on the Board of Supervisors in regard to street improvements. These powers seem to embrace every conceivable variety of street improvement, and they certainly embrace the whole or any portion of the streets to be improved. The language used is not of such a character as to confine the powers vested in the Board to each street. If such had been the intention of the Legislature, language suitable to disclose that intention and warrant the interpretation that each several street was referred to, and that the powers granted were to be so confined, could have been readily found and would have been employed. Such an intention would have been clearly manifested by inserting the words " of each " before the words " of the said streets," etc. To sustain the construction of the words referred to would be to violate the well-settled rule for the construction of statutes, that the words are to be taken in their ordinary and popular sense unless technical words are used—when words of the latter character are used, the technical meaning must be adopted. No such words as those last mentioned are before us for construction, in considering the point under examination.

The power as to sewers is as broad as the power in relation to streets. The language employed in regard to them indicates

that they were considered by the law-makers as necessary to make and complete the streets referred to, and the Board is invested with power to order them constructed, with reference to the completion of the *whole or any portion* of said streets, etc. The street cannot formally be accepted, nor can any portion of a street, until a brick or cement-pipe sewer has been constructed therein (§ 20 of Act of 1872); which distinctly shows that, in the view of the law-making power, the street was not completed until the sewer or its substitute had been made. An exception to this is where such improvement as a sewer is deemed by the Board to be unnecessary. It would be strange legislation to provide that the *whole or any portion* of the street referred to in sections one and two might be improved under one order or resolution or award, as designated by grading and regrading, paving and repaving, macadamizing and remacadamizing, and that an order or proceeding for such an improvement as a sewer must be confined to one street. To restrict in this manner the power of the Board, might have entailed such an expense in the construction of a sewer as to retard the improvement of property, or have impaired the health of the city. The topography of the region might indicate a street running at right angles or at any other angle to another, as the proper medium of exit for the sewage matters to be carried off; whereas the extension of such an improvement in the continuous line of the street might be rendered unwise or injudicious by the interposition of a high cliff or other obstacle, entailing difficulty and expense which might render the work impracticable by reason of the heavy charge which would fall on the property-holders. Under such circumstances the improvement could not be made—it may be to the great detriment of persons living near. In this view, the power was wisely vested in the Board to make the sewer in the mode adopted in the case before us.

· That the Legislature had the constitutional power to invest the Board of Supervisors with this authority, we regard as settled by the case of *Emery* v. *The San Francisco Gas Company*, 28 Cal. 345, and the numerous cases approving and following it; particularly, *Emery* v. *Bradford*, 29 Id. 82; *Appeal of Piper*, 32 Id. 557; *Walsh* v. *Matthews*, 29 Id. 123;

*Taylor* v. *Palmer*, 31 Id. 240 ; *Chambers* v. *Satterlee*, 40 Id. 514 ; *Meuser* v. *Risdon*, 36 Id. 244.

Nor is this interpretation out of harmony with the other provisions of the act, as is contended on behalf of appellant. It is urged for him that the Board of Supervisors, in joining Willow Avenue and Gough Street, in advertising for bids, and in awarding the contract for both streets jointly, prevented the owners of property on Willow Avenue, and the appellant, from taking the contract and doing the work on the avenue, and that this was a fraud on defendant. To sustain this position, we are referred to § 6 of the Act of 1872, above cited.

It is provided by this section that after the award for doing the work shall be made to the successful bidder, notice of it shall be published for a certain number of days, " and within five days after the first publication of said award, the owners of a majority of the frontage of lots and lands liable to be assessed for said *work*  *  *  *  may elect to do the said work," and enter into the contract awarded, etc.

We see no violation of the rights of appellant in this cause. The majority of the owners of the frontage on both streets, Gough Street and Willow Avenue, were not prevented from electing to do the work and take the contract. The whole frontage on both streets is referred to, (for that is the frontage of the *work*) and not the frontage on Willow Avenue alone, as is the contention of appellant.

It must be presumed that the publication of the award as required by the law was made, nothing appearing to the contrary in the record before us, and the majority of owners above referred to were at liberty to elect to do the work under the contract awarded. For the reasons above given, we find no error in the order overruling defendant's demurrer to the complaint.

The further point is made, that there is no evidence that the Board of Supervisors heard or took testimony on the appeal from said assessment. Conceding that *The People* v. *O'Neil*, 51 Cal. 91, is correctly decided, (and we see no reason to doubt it) it does not appear from the statement, which it represents " contains all the testimony, proof, and evidence," that any testimony was offered by the parties appealing, or that they asked

that any witnesses be sworn and examined. From the statement this appears : " Mr. Gunnison, called for plaintiff, testified that he had witnesses, but did not recollect whether they were examined before the Board; thought they were not sworn, and that a legal question was raised and referred to the City and County Attorney on motion of Mr. Lynch, and he returned to the Board his opinion thereon." On this opinion, it seems the appeal was dismissed.

The above is consistent with the fact that the only matter urged on the appeal was a question of law, on which the Board passed, and dismissed the appeal. It is also consistent with the fact that the witnesses were never present at any time during the action on the appeal, or if they were, that the appealing parties did not ask then, or at any time, that they should be sworn and examined. In the case referred to in 51 Cal., the Board, without giving any notice to the parties of the time and place of hearing the appeal, made an order dismissing it, and on this ground the Court held that the appeal must be regarded as still pending ; and, therefore, the action was prematurely instituted. As regards this point, there was no error committed by the Court below.

But it does appear from the testimony that the contract was not completed within the time specified within it. The contract bears date the 12th day of November, 1874, and by its terms the work was to be commenced within five days, and completed within twenty days from date of the contract. The plaintiff had until and including the 2nd day of December, 1874, to finish the work. The evidence shows it was not finished until after that date, viz., on the 13th of January, 1875. This is fatal to the assessment. See *Beveridge* v. *Livingston* (54 Cal. 54) ; *Turney* v. *Dougherty* (opinion filed October 6th, 1879). In these cases the time had been extended, but not until the time fixed by the contract for completing the work had expired. In the case before us *there was no extension at all.* The first case cited above was under the Act of 1872, referred to in this opinion—the latter under the Act of 1862. In the latter case, the Court said : " Before the extension of the time, it is obvious that the contractor could claim nothing under the contract, and

it would be · as impossible for him to attempt to do so as it
would if he had abandoned the contract or rescinded it, as far
as he had power so to do." This language *a fortiori* applies to
the Act of 1872. (See *Beveridge* v. *Livingston*, above cited.)
This defect could not be cured by an appeal to the Board of
Supervisors, and therefore it could not be reached by appeal.
(*Dougherty* v. *Hitchcock*, 35 Cal. 523.)

Conceding for the purposes of this case that the Superintend-
ent of Streets, under the direction of the Board of Supervisors,
might have extended the time after the time fixed in the con-
tract had expired, and before the work was done, there was no
power at any time to do so after the work was completed before
such extension.

An issue is directly raised in the answer on this point, and
we discern no finding on it, unless it be, "that the plaintiff had
done and performed said work as specified in said contract."
Construing this to be a finding on the issue referred to, it is not
sustained by the evidence. If this be not a finding, then the
judgment should be reversed and cause remanded for want of
a finding on this point. (*Billings* v. *Everett*, 52 Cal. 661;
*Shaw* v. *Wandesford*, 53 Id. 300.) In our opinion the Court
erred in denying the motion for a new trial.

The judgment and order are therefore reversed, and cause
remanded for a new trial.

SHARPSTEIN, J., and MYRICK, J., concurred.