The opinion of the Court, was delivered by
Bermudez, C.'J.
The object of this suit is to render inoperative a judgment for a drainage tax, and eventually, to regulate its effect.
The conspicuous features of the case presented by the Record, are the following :
In January, 1875, a judgment was- rendered on appeal, by the Supreme Court of this State, then in existence, reversing that of the lower court, and approving and homologating the assessment roll presented in 1871, by the Commissioners of the First Drainage District, the approval and homologation to operate as a judgment against the property described, as assessed in said roll and also against the owner or owners thereof, with ten per cent, in addition to the amounts assessed, to pay costs and counsel fees. 27 A. 21. This judgment was affirmed by the Supreme Court of the United States, who did so, saying that there was no error in the judgment of the Supreme Court of Louisiana, of which it has cognizance. 96 U. S. 96.
A piece of rural property, known as the “ Allard Place,” was mentioned on said roll as belonging to John Davidson. A tax of §40,253.85 was assessed upon it, as due for the drainage of the same.
Upon the complaint that the City of New Orleans, which had by law succeeded the commissioners, was about to take steps for the satisfaction of that claim, out of said property and of other property of theirs, and that said judgment had ceased to have any vitality, for reasons stated, and could no longer be enforced, the widow and executrix, and the heirs of John Davidson obtained an injunction arresting the writ, and prayed that it be perpetuated ; that it- be decreed that the City of New Orleans has no legal claim on any of their lands for drain *171 age; that all inscriptions therefor be cancelled, and if this relief be denied, that said claims be restricted to the specific property upon which it was assessed, and not to be a personal debt against any of them.
The City filed exceptions to the jurisdiction of the court, and pleaded res judicata and no cause of action.
On appeal from a judgment dismissing the suit, this Court disposed of the exception to the jurisdiction and of no cause of action, and reserving the right of defendant to reiterate the other plea, and to set up other defenses^ remanded the case. 32 A. 1245.
Upon the remanding, the City renewed the plea of res judicata, and asserted the impairing of the obligations of a contract, alleged to have been formed, touching the levy, collection and application of the drainage tax claimed.
John Crosley & Co., representing themselves as owners of drainage warrants, $688,695, whereof $368,695 issued under Act 30 of 1871, and $320,000 under Act 16 of 1876, of the General Assembly of this State, intervened in this suit. They claim that the warrants were issued with due authority, for legal consideration, and are secured for payment, under the. statutes which constitute a contract, the obligation of which could not be, and were not, legally impaired by any act of the State.
They claim no judgment, either against the plaintiffs or against the City.
From a judgment in favor of plaintiffs, the defendant and the intervenors have appealed.
The grounds upon which plaintiffs seek relief, appear to be six in number: %
1. That all of petitioners’ land in the First Drainage District, between the Mississippi River and Metairie Ridge, having been drained, and the expense of the drainage having been paid under the drainage statutes of 1835, 1839, the subsequent assessment, under the Act of 1858, merged into the judgment enjoined, and is'not legally exigible.
2. That by Act 165 of 1858, the assessments for draining any one section or district, could not exceed $350,000, and payments of drainage tax having been made in excess of that amount, there is nothing due and exigible under the judgment aforesaid.
3. That the tax levied and imposed in the First Drainage Section for drainage purposes, is greater in amount than the benefit to be derived by the owner of the assessed property from the drainage work; taxation accompanied by such result is tantamount to cónfiscation and, by reason thereof, the tax is violative of the fundamental law and so void.
*172 4. That the drainage acts passed in 1858 and 1859, 1861, and Act 30 of 1871, levy and impose a drainage assessment not equal and not uniform, and, therefore, are violative of the Constitution of Louisiana, in force at the time when those laws were enacted.
5. That the drainage work for which-the tax underlying the judgment in controversy was rendered, lias not been done, and that the scheme has been abandoned; that such abandonment works a cancellation, both of the drainage tax and of the judgment for the same, herein enjoined.
6. That the drainage assessment against the property of their author, John Davidson, and the judgment obtained therefor, have been released by Acts 48 and 67 of 1877, and Act 147 of 1878, of the General Assembly of the State.
In defense, the City pleads, that all these grounds, with the exception of those which relate to the non-performance and abandonment, and to the release mentioned, were advanced in the opposition filed by the succession of John Davidson, represented by his executrix, to the proceedings for an homologation of the drainage tax assessment roll or tableau; that they were directly passed upon by the Supreme Courts, both of Louisiana and of the United States, and that such judgment constitutes res judicata; that even if these grounds had not been specifically and fully set forth, they should have been thus alleged, as they then existed and could have been set forth, and that they cannot be propounded after judgment.
The City of New Orleans further pleads and argues, as concerns the additional defense of abandonment and release: that the work was done, as far as practicable, that there has been no abandonment on the part of the City, but merely a temporary suspension of operations, wholly occasioned by the fault of the property owners, in not paying their drainage tax; that an actual abandonment by the City would not have the legal effect of relieving the taxpayers of the drainage assessment and tax; that at the time of the pretended abandonment, the Mississippi and Mexican Gulf Ship Canal Company and its transferrees, and the holders of warrants issued by the-Company, had acquired a vested right to the entire ta,x levied in the four drainage sections; that such pretended abandonment, if supplemented by a release of the property owners from a payment of that tax, will impair the obligation of a contract, and divest the valuable rights thus vested in the Company and the parties referred to, and consequently, that the alleged abandonment and the pretended cancellation of the drainage assessment, must be treated as in violation •of the fundamental law, and so, absolutely void.
From the view which we have taken of the merits of the controversy, from an independent standpoint, we do not think it necessary to pass *173 upon the defense of res judicata. If it were sustained, the first fouigrounds relied upon by the plaintiff could not be considered. If it were overruled, we would not adjudicate upon their sufficiency for relief, as there exists another ground upon which we can satisfactorily rest a decision of the case before us.
The same view dispenses us from determining, whether the judgment enjoined can or not be construed and regulated in its effect, so as to be restricted in its enforcement to the property on which the drainage tax was assessed, and from which it is claimed that it should primarily be paid; in other words, whether the judgment be both real and personal, or real only.
For the same reason, we are relieved from the obligation of considering and determining the effect of Section 12, of Act 165 of 1858, as well as that of Acts 48 and 67 of 1877, and of Act 147 of 1878, invoked by the plaintiffs for their further protection.
Conceding, for argument’s sake, that the first four grounds of the petition, and all other causes of complaint, which existed and could have been set up at the date of the opposition - to the drainage assessment roll, have been adjudicated upon, and that the judgment rendered constitutes an insuperable objection to their being again agitated, it does not at all follow that the judgment is one which necessarily must be executed, or one which cannot be nullified, that is: declared inoperative, and of no effect; in other words, paralyzed, as though it were' a nullity.
It is worthy of note, that in the opinion rendered in 27 A. 21, the Court expressly refers to the memorable decision in 11 A. 370, which both parties from different standpoints invoke as a shield in this litigation for their respective protection. That opinion contains a most material reserve, which leaves a wide door open for resistance to the judgment in question.
This suit is to have that judgment declared inoperative, because of what has occurred since it was pronounced, and which coidd not have been pleaded before it was rendered. '
As was said in our previous opinion: “ It is easy to conceive that *■ * * cases may arise in which causes occurring subsequently to the rendition of judgments may render their execution illegal and inequitable and violative of rights not within the contemplation of thé Court when the judgment was rendered, and not intended to be foreclosed thereby. Examples are suggested of eviction of the vendee áfter judgment for the price, or eviction of a tenant, or destruction of leased premises, after judgment for future rents, and such examples might be easily multiplied. Here would be failure of the only possible consideration of such judgments, and it could not be doubted that such failure *174 would furnish just ground to enjoin their execution.” See 13 A. 249; 3 Á. 646 ; Story’s Eq. H 887, 889.
In its wisdom, the Spanish law, once in force in this State, but the spirit of which has survived intervening changes, and still abides with us, expressly provides for such contingencies on the subject of res judicata. It declares that, if the parties have appealed from the judgment and it is confirmed by the sentence of a competent superior tribunal, they shall be bound forever by it thereafter; “ yet if anything should happen to destroy its force, it will cease to have effect, either against the parties or their heirs.” Partidas 3, Tit. 22, Law 19.
This principle is necessarily inherent to all legislation, particularly where the consideration of the judgment is prospective and must have enured, as a condition precedent, to its execution or enforcement.
■ In the case in which the judgment invoked as constituting res judicata was rendered, the Court formally declared that the constitutional questions raised had been decided in II A. 370.
Referring to the opinion in that celebrated controversy, we find that the Court there used the following language:
“ We have not understood from counsel, that there are cases in which the property has not been so far benefitted by the work done as to be increased in value more than the cost of the work assessed. Were not this the. case, the property of each proprietor, to the extent of the difference between the increased value and the cost of the work assessed to him, would be taken for a purpose of public utility, without adequate compensation previously made, and consequently there would be a violation of Article 105, of the Constitution.”
Now, in the present controversy, it is claimed that the sole consideration of the judgment at stake was the prospective benefit to accrue by the contemplated execution of the projected work and the consequent enhancement of value of the land, to the extent at least of the amount levied upon it; that whatever work has been done by the commissioners or the City, has been a detriment, rather than a benefit to the lands of *plaintiff; that the work has been abandoned, and that there is no probability that it will be resumed; that whatever taxes might be collected would go, not towards the completion of the scheme, but to the satisfaction of the warrants in question; that all the labor expended in the first drainage district has been paid for; that there are no drainage warrants outstanding for the work said to have been executed in the first district, except for the insignificant sum of $450; that the judgment of homologation was of the tableau 'for the first drainage district, the proceeds applicable to the same; that the claim of intervenors is under warrants issued for liabilities of other districts, *175 and finally, in substance, that the consideration of the judgment haying failed, it cannot be enforced.
We have considered the statements which the District Judge has systematically made of facts found by him; we have compared it with the oral and written evidence introduced on the' trial of the case, and we find that the averments made by the .plaintiffs are established, touching the absence of any benefit derived from the contemplated drainage; injury sustained ip consequence of what work was done; the nature and condition of their property, which' is' almost entirely and always under water; a place of resort for water fowl, hunting and fishing; the absence of any outstanding warrants for work of any kind done in the first drainage district, except for a small amount; the abandonment of all drainage work; the disposal of all drainage apparatus; the impotency of the City to resumé the enterprise; the value of the property on which the tax is assessed, which is shown to be at best one-tenth of the amount of the claim, with charges superadded.
In presence of such a state of facts, can it be insisted, in good conscience and in equity, that the judgment enjoined shall be enforced ? ' In answer, we are confronted with the saying of our immediate predecessors, in the case of the Canal Bank vs. New Orleans, 30 A. 1376, wherein they asked whether if they were to consider, as conclusive evidence, the declarations contained in the Acts of 1877, that would be sufficient to establish that the work contracted for and done, has not been performed at all, or not performed according to the terms of the contract, and that every outstanding warrant given as the price of that work, is without consideration 1
In answer to the formal question put by themselves, viz: “ Would those declarations, if taken as evidence, be sufficient to justify the Court to pronounce in this suit, that, in whosever hands those warrants may have passed, * * * they are invalid and void, worthless as to the creditors, binding on no one, and that every guarantee, mortgage and privilege securing their payment, must be cancelled, erased and destroyed;” they have answered: “ we tMnh not.” 30 A. 1376. ■
The suit wherein this language is found, was one- in which the plaintiff was asking the reimbursement of a sum of money paid without compulsion as a drainage tax. The ground for repetition was want of consideration and subsequent release from the tax and all liability, by the 1 egislation of 1877, previously noted. The Court did not stop there. They ended the opinion by saying: “We conclude that plaintiff has not shown that its drainage taxes were levied and paid without consideration, and that it was shewn, in so far as defendant is concerned, that said taxes were voluntarily paid and properly disposed of.”
*176 The warrant holder who had intervened, was dismissed, on the ground that as no judgment susceptible of being rendered could affect him, he had no foundation upon which to stand, and, therefore, no interest to assert and to protect in that litigation.
The putting and the answering of the question were uncalled for. The matter was not discussed. It was not necessary to consider it at all for the determination of the issue presented, which was simply the return rel non to the plaintiff, of a sum of money willingly paid as a drainage tax — the ground .of repetition being, as already observed, want of consideration. The language used on the occasion, must, therefore, be taken merely as obiter.
Under the authority in 11 A. 370, which underlies the rulings in 27 A. 21, we are of a different opinion, and consider that where the consideration of a judgment is prospective and has failed, the eventual debtor is, both in law and in equity, entitled to relief and the consequent exoneration.
That authority and the conclusions to which we have arrived, are supported by text-writers and a long line of decisions, in a number of our sister States, declaring assessriients void, because the benefit to the .property could not be seen and traced. In all the cases in which it was clear that the district had received no benefit, the Courts have, without hesitation, interfered on this subject. Mr. Cooley, in liis work on Taxation, says :
“ The levy is made on the supposition that the estate, having received the benefit of a public improvement, ought to relieve the public from its expense. In such a case, if the owner can have his land taken from him, for a supposed benefit to the land, which, if the land is sold for the tax, it is thus conclusively shown he has not received, and he then be held liable for the deficiency in the assessment, the injustice, not to say the tyranny, is manifest.” Cooley oil Tax. 471-3.
Judge Burroughs, in his treatise on the same subject, writes more pointedly:
“ If there can be a personal assessment, or the owner can be made personally liable for the tax thus imposed, then we have the remarkable result that for a tax which is imposed on a lot of land, upon the theory that its pecuniary value is increased by the improvement, the lot may be sold, and if there is a deficiency, the owner may be required to pay it; or, in other words, for the benefit conferred on the property, the property may be confiscated, and the owner, for the privilege of having it confiscated, may be required to pay a tax into the treasury of the City.” Burroughs on Tax. p. 475, V. also p. 38, §§ 30,39; p. 459, §§ 145, 146, 147; pp. 466, 474; 31 Cal. 240, 254 ; 41 Cal. 525 ; 49 Cal. 546; 41 N. Y. 123, 126, 133; 36 Mo. 456 ; 50 Mo. 525 ; 56 Mo. 286, 356 ; 58 Penn. *177 320; 1 Gill. 480 ; 5 Gilman, 416; 59 Maine, 80 ; 3 Busli, 416, 423, 667; 4 Bush, 587; 34 111. 203; 24 Miss. 497.
Finding such to be the ease in the present controversy, we concur with our learned brother of the District Court, in the conclusions which he has reached in favor of plaintiff.
As the judgment sought to be executed by the City has become inoperative, and so caunot be enforced, and as the claim of the intervenors hinges and is contingent upon that of the City, the unavoidable consequence is, that the intervention must fail with the main defense, ashing the execution of the judgment enjoined.
AYe say, that the claim of the intervenors is based upon that of the City, for the reason which they themselves aver in their pleadings, and assert in argument, that, under the laws by virtue of which tlie warrants were issued, and also of the intervening Constitutional Amendment of 1874, they can only be paid out of the drainage taxes realized.
If the statutes and the amendments constitute a contract in their favor, it is one which, by its very terms, is subordinate to the collection of drainage taxes legally due aud exigible.
AVhere no such taxes are demandable, the contract, whatever it be, and the rights averred under it, necessarily fall through.
There exists a marked disparity between the present case and that of the State ex rel. Martin vs. Police Jury, Caddo Parish, 32 A. 1022, to which our attention has been called by the learned counsel of defendant and intervenors.
In that case, bonds had been issued with legislative sanction, in exchange of scrips and evidences of parochial indebtedness emitted for considerations, but without legal authority. They had been made payable by the parish in a manner indicated, but without restriction as to the source of payment.
Hence, on the refusal of the municipal authorities to levy the tax provided by the law and asked by the bondholders, a mandamus was allowed.
In the present instance, if the warrants held and produced on the trial by the Relators, for the amounts before stated, be legal and valid, under the Statute of 1871 and that of 1876, and the Constitutional Amendment of 1874, the last act resting on the former and on the amendment, no provision of subsequent law has been referred to, directing them to be paid in a manner different from that mentioned in the Statutes and in the amendment.
The payment of those warrants is, therefore, to be regulated by the provisions of the authority under which they were issued, and that authority expressly confines it exclusively to a special fund, when realized, and-if realized.. It is to. take place only from the drainage *178 assessments or taxes, “ and not otherwise.” The payment was, therefore, to be completely hypothetical, contingent upon eventualities susceptible of happening, or not, and was glaringly restricted by well defined limitation.
The want of analogy between the two cases is manifest, both as to the facts and as to the law.
While charging an impairment of their alleged contract, the int.ervenors cannot be heard to ask to be permitted to assail and destroy its integrity, by demanding over and above that which may have been covenanted. 33 A. 386.
Their contract, if it exists, and whatever it be, is the law controlling their rights.
It is therefore ordered and decreed, that the judgment appealed from be affirmed, with costs.
Rehearing refused.