# CONNOLLY v. CITY AND COUNTY OF SAN FRANCISCO.

## No. 14,397; August 22, 1893.

### 33 Pac. 1109.

**Street Improvement—Abandonment by Contractor.**—Where a contractor for street improvements, who is to be paid by assessments of benefits, abandons the contract before it is completed, because the assessments made were illegal, he is not entitled to any warrant or assessment thereunder.[1]

**Street Improvement—Limitation of Actions.**—Where a contractor is to be paid for street improvements by assessment of benefits, and the supreme court decides that no legal assessment can be made under the act authorizing the same and the improvements, the personal liability of the city, if any, becomes fixed, and the statute of limitations begins to run not later than the date of such decision, and an action against the city to recover therefor, commenced more than nine years after such decision, is barred.

**Street Improvement—Liability of City When No Assessment Possible.**—Where a contractor for street improvements is to be paid

---

[1] Cited without comment in City of Auburn v. State, 170 Ind. 535, 84 N. E. 991, the court saying the question was not properly before it as to the right of recovery on a quantum meruit by a contractor under an uncompleted contract.

by assessment of benefits, and he agrees to exempt the city from any liability under his contract, he cannot recover of such city for the improvements, because no legal assessment can be made to pay him therefor.[1]

APPEAL from Superior Court, City and County of San Francisco; J. McM. Shafter, Judge.

Action by Peter Connolly against the city and county of San Francisco to recover money alleged to be due on certain contracts for grading streets. From a judgment for defendant, plaintiff appeals. Affirmed.

John J. Coffey for appellant; Garber, Boalt & Bishop for respondent.

PER CURIAM.—On the eighth day of May, 1867, the plaintiff entered into a written contract with George Cofran, superintendent of streets of the city and county of San Francisco, to grade Market street, in that city, from Valencia street to Castro or Seventeenth street. Under the contract the work was to be commenced within thirty days and completed within three hundred and sixty-five days after its date, and the superintendent, "acting in his official capacity," agreed that on its completion "he will duly make and issue an assessment, and attach a warrant thereto, as provided for in the aforesaid acts (the consolidation act and its amendments), for the expenses of the work," at a price named per cubic yard. The terms of the contract were further stated as follows: "And it is agreed and expressly understood by the parties to this agreement that in no case, except where it is otherwise provided in the acts aforementioned and referred to, will the said city and county of San Francisco be liable for any portion of the expense° of the work aforesaid, nor for any de-

---

[1] Cited and approved in Union Trust Co. v. State, 154 Cal. 726, 24 L. R. A., N. S., 1111, 99 Pac. 187, as authority that, "son far as this state is concerned, it must be taken to be settled that a provision in the contract that the city shall not be liable, will prevent any recovery against such city if the assessments, for any reason, fail to discharge the cost of the work."

Cited in the note in 32 L. R. A., N. S., 164, on the liability of a municipality which is unable or has failed to enforce assessments for local improvements.

linquency of the persons or property assessed.'' The plaintiff commenced work and expended a considerable sum of money pursuant to the terms of his contract, but, before the time for its completion had arrived, he discovered that a portion of the line of the street to be graded was the private property of individuals, who refused to recognize the validity of his contract, or to be bound thereby; and thereupon he petitioned the board of supervisors to take such action as would save him harmless. Five extensions of the time to complete the contract were thereafter granted, aggregating 1,065 days, and extending down to April 18, 1871, but he did not in fact complete the work until November, 1871, about seven months after the expiration of the time extended, and after the contract had become extinguished by his failure. On April 2, 1870, an act was passed by the legislature entitled ''An act to authorize the board of supervisors of the city and county of San Francisco to open and grade Market street, in said city, from the intersection of said street with Valencia street to its intersection with Seventeenth street, and to condemn private property for the roadway of said street'': Stats. 1869–70, p. 626. By this act the board was ''authorized and required to cause Market street, . . . . from its intersection with Valencia street to its intersection with Seventeenth street, to be opened and graded; . . . . and wherever the line of said Market street, as now projected upon the official map of said city, between said points of intersection, crosses or passes over land the private property of any person, and which has not heretofore been dedicated to the public as a part of said street, and any portion of such land is necessary to be included within the limits of such street, it shall be the duty of said board of supervisors to proceed as herein directed for the condemnation of said land so included within the limits of such street.'' The act provides that the board shall, within twenty days after its passage, cause a petition to be filed in the county court of the city, describing the property necessary to be condemned, and stating the names of the owners. Notice to such owners and a hearing are then provided for, and if, upon such hearing, the court is satisfied that the lands are necessary or proper for the opening of said street, it is to appoint commissioners to ascertain and assess the compensation to be paid for the land condemned, such

payment to be made out of the first moneys received under the special assessment provided for by the act; and that, immediately upon the filing of the petition for condemnation, the city and county, "shall and may, by its agents, employees, or contractors, enter into and upon" the land, "and proceed to grade and open the same as a public street, as fully, to all intents and purposes, as they might or could do after the confirmation of said commissioners' report, and the actual payment of the compensation therein provided for"; and that "it shall be the duty of the board, . . . . within thirty days after the passage of this act, to cause notice of the proposed work to be published, . . . . inviting sealed proposals for the work of grading Market street, . . . . and the duty of the superintendent of public streets and highways . . . . to enter into a contract with the person to whom the contract shall have been awarded." The act defines the district deemed to be benefited by the work, and makes it the duty of the board of supervisors, after the completion of the work, to appoint commissioners to assess such benefits, and also makes it the duty of the said commissioners to determine the value of the work done upon Market street by the plaintiff under the contract of May 8, 1867, and to add thereto the expenses incurred by plaintiff in building railroad tracks, cars, and other appliances that he may have deemed necessary in the performance of his work, and to allow him interest on the whole amount found due at the rate of one and one-half per cent per month from the eighth day of May, 1868, until the filing of the report of the commissioners. The said commissioners were also required to "assess the actual amount due for the work of opening and grading authorized and directed to be done," together with the amounts awarded as compensation for land appropriated and the costs of the proceedings upon the several lots benefited within the district defined, in proportion to the benefit deemed to have accrued to each lot. The act also, in section 22, provides that the tax collector shall, at the end of every ten days after the receipt by him of said assessment-roll, "pay over to the treasurer of said city and county the amount of money collected by him within the preceding ten days upon said assessment; and, as soon as a sufficient sum has been received by said treasurer, he shall pay to the said Connolly the amount of money which may be

awarded to him by the commissioners' report as aforesaid'';
and, after paying the other charges as provided for, the said
treasurer shall pay over to the superintendent of streets the
residue, ''and the said superintendent shall immediately pay
the same in like gold coin to the person or persons entitled
to receive the same, as hereinbefore directed, until the full
amount due for said work, as per contract hereinbefore au-
thorized, is paid and discharged.''

In November, 1870, proposals for the work to be done under
this act of the legislature were advertised for, and upon a
bid of plaintiff therefor the contract was awarded to him;
and on November 22, 1870, a contract was entered into be-
tween plaintiff and M. C. Smith, superintendent of streets.
It is recited therein that Connolly has been awarded the con-
tract for the work, under and pursuant to the act of the legis-
lature of April 2, 1870, above referred to; and Connolly agrees
with Smith, ''as such superintendent, acting under and in
pursuance of said act of the legislature, and in conformity
therewith, that he will do and perform'' the work specified
within nine months from the date of the contract, ''as pro-
vided and conditioned in section 13 of said act.''    Then fol-
lows a provision for Connolly's payment as follows: ''And
it is agreed and expressly understood by the parties to this
agreement that payments for the said work shall be made as
provided in section 22 of the said act hereinbefore referred to,
and that the said superintendent of the said city and county
of San Francisco shall not be otherwise made liable therefor
than is provided in and by said act.''    Pursuant to this con-
tract the plaintiff commenced, and on November 22, 1871,
completed, the work to be done thereunder, and the same was
accepted by the superintendent of streets.    As required by
the act, a petition was filed and proceedings had in the county
court, and the said court determined that the lands described
in the petition were necessary for the opening of the street,
and appointed commissioners, as directed, to ascertain and
assess the compensation to be paid to the owners thereof.    Sub-
sequently these commissioners made their report as to the
ownership and compensation to be paid for said lands.    In
due course, also, the three commissioners to assess the benefits
and to determine the amount to be awarded to the plaintiff
under his first contract, and the amount due for his work

under his second contract, as required by the act, were appointed and organized as a board. To these commissioners the plaintiff presented his claims under both contracts, and the same were allowed for certain specified sums. The report of the commissioners to the county court was by that court set aside on March 6, 1873, and it was "ordered that no further proceedings be had in the premises, on the ground that no valid assessment could be made under the act." From this order an appeal was taken to this court, where the order was affirmed in January, 1875: In re Market Street, 49 Cal. 546. On March 17, 1884, plaintiff presented to the board of supervisors of defendant his claim for the amounts alleged to be due him under his said contracts, and demanded in writing payment thereof, but the board rejected the claim, and refused to pay the same, or any part thereof. Thereafter, on April 3, 1884, plaintiff commenced this action to recover the amount so claimed to be due, with interest.

The defendant by its answer denied most of the averments of the complaint, and alleged that the causes of action set forth therein were barred by the provisions of sections 337, 338 (subdivision 1), 339 (subdivision 1), and 343, Code of Civil Procedure, and also by the provisions of section 90 of the consolidation act.

The case was tried by the court without a jury, and, among other things, the court found that the action was barred by the provisions of each of the sections of the code pleaded, and also by the provisions of the section of the consolidation act pleaded; the findings upon these issues being numbered 12–16. Judgment was accordingly entered that the plaintiff take nothing by his action, from which judgment and an order denying a new trial he has appealed.

The only specifications of the particulars in which the evidence is alleged to be insufficient to justify the findings above referred to are as follows: "The defendant having failed to give to the plaintiff the warrant and assessment agreed upon in the first contract, and having failed to pay, or cause to be paid, the sum for the second contract, in this findings 12–15 are not supported by the evidence. There being no evidence, either on the part of the plaintiff or the defendant, that the claim sued upon in this action was one of the class mentioned in section 90 of the consolidation act, finding 16 is not sup-

ported by the evidence.'' Under these specifications the findings and judgment cannot be disturbed. The first contract was never completed by the plaintiff, and he therefore never became entitled to any warrant and assessment thereunder: Mahoney v. Braverman, 54 Cal. 570; Fanning v. Schammel, 68 Cal. 428, 9 Pac. 427; Raisch v. City of San Francisco, 80 Cal. 1, 22 Pac. 22. The amounts awarded the plaintiff by the commissioners and due him under the second contract were to be paid as provided in the act of April 2, 1870. Those amounts became due and payable when the work was completed and accepted by the superintendent of streets in November, 1871, and, if any personal liability on the part of the defendant to pay them thereafter arose, because no valid assessment for their payment was or could be issued, that liability became fixed and certain as early at least as January, 1875, when the decision of this court in the case of In re Market Street, supra, was rendered. The statute of limitations then, if not before, began to run, and the causes of action were barred long before the complaint was filed in 1884.

There is another ground, also, on which the decision of the court below might have been safely rested. By the terms of each of the contracts the plaintiff expressly agreed to the exemption of the defendant from any liability thereunder, and thereby, as against the defendant, waived all legal claims to the money now sought to be recovered. These agreements were made and still are binding on the plaintiff, and he cannot now escape their consequences: Conlin v. Board (decided July 21, 1893), 99 Cal. 17, 37 Am. St. Rep. 17, 21 L. R. A. 474, 33 Pac. 753.

In view of what has been said, it is not necessary to consider the other points discussed by counsel. The judgment and order must be affirmed, and it is so ordered.