[L. A. No. 1231.   In Bank.—April 3, 1905.]

JEREMIAH CREED et al., Appellants, v. C. L. McCOMBS et al., Respondents.

STREET ASSESSMENT—NON-PERFORMANCE OF WORK—PROTEST—APPEAL. —Under the Vrooman Act it is one ground for appeal to the council "that the work has not been performed according to the contract in a good and substantial manner." A written protest filed with

[1] 24 Am. Rep. 191.

CXLVI. Cal.—29

the clerk of the council against the acceptance of the work, "for the reason that said work has not been performed according to the specifications and terms of said contract," would be readily under-stood as an appeal from the action of the street superintendent in accepting the work and issuing an assessment, warrant, and dia-gram therefor; and where it was so understood and acted upon by the council and all parties concerned, and no one was misled to his prejudice by the form of the appeal, the protest must be deemed effective to constitute such appeal.

ID.—SUSTAINED APPEAL NOT RESCINDABLE—PENDENCY OF APPEAL.—Where the appeal was sustained, and the action of the street super-intendent in accepting the work and in issuing the assessment, war-rant, and diagram was set aside and reversed, the council has no power to rescind or vacate its former action, and where it assumed to do so its order is void, and the appeal remains pending before it.

ID.—POWER OF COUNCIL AS TO ASSESSMENT AFTER APPEAL SUSTAINED.—The city council, after the sustaining of an appeal from the accept-ance, has power, upon ascertaining that the work has been completed to its satisfaction, either to order a new assessment or to readopt and order to be issued the former assessment, which can be redated and made effective as the assessment for the completed work; but it has no power to give any retroactive effect to a premature assessment made before the completion of the work, so as to make it effective from its date.

ID.—INVALID BONDS UPON VACATED ASSESSMENT — RIGHTS OF BOND-HOLDERS.—Bonds issued upon the original assessment thirty days after its original date, where the original assessment has been vacated upon appeal, are invalid and void; but the bondholder, as assignee of the contractor, may receive payments of new assessments when issued or receive new bonds, if payment thereof is delayed for thirty days.

ID.—IRREGULARITIES NOT CURED—AMENDMENT OF BOND ACT — PRIMA FACIE EVIDENCE.—By the amendment of 1899 to section 4 of the Street Bond Act, making the bond *prima facie* evidence only of the regularity of the proceedings, the burden of proof merely is affected; and where the record is produced showing what was actually done, the amended Bond Act has no curative effect on any irregularities appearing thereon.

APPEAL from a judgment of the Superior Court of Los Angeles County. D. K. Trask, Judge.

The facts are stated in the opinion of the court.

Haas & Garrett, for Appellants.

Dunn & Crutcher, for Respondents.

SHAW, J.—Action to quiet title. The defendant Security Loan and Trust Company of Southern California filed its separate answer to the complaint claiming an interest in the property in question as owner and holder, by assignment of certain street-assessment bonds issued against said property. The other defendants defaulted. The judgment was in favor of the defendant answering, and declares the validity of the bonds and that they constitute a lien upon the said property. The plaintiffs appeal from the judgment.

The case was tried upon an agreed statement from which we glean the following: The plaintiffs owned certain lots in the city of Los Angeles fronting on Clanton Street. Proceedings were had under the Vrooman Act for the improvement of said street, including that portion of it whereon said lots abutted. A contract was let by the said city to defendant McCombs for said street work and within the agreed time the work was completed to the satisfaction of the street superintendent of said city, who thereupon accepted said work and issued to McCombs an assessment, warrant, and diagram in due form under said act. Certain owners of lots benefited by said work and involved in said assessment thereupon filed with the clerk of the council of said city a protest, signed by A. D. Westbrook et al., which reads as follows: "We, the undersigned citizens of the city of Los Angeles, and property-owners on Clanton Street, between the west line of Central Avenue, west three blocks to east line of Griffith Avenue, do hereby protest against the acceptance by your honorable body, of the street improvement work done upon said street, for the reason that said work has not been performed according to the specifications and terms of said contract." This protest was treated as an appeal from the action of the street superintendent to the city council and was duly heard as such on June 4, 1900, and the minutes of the said council in regard thereto recite as follows: "The matter of the appeal of A. D. Westbrook et al., No. 317, from the acts and determinations of the superintendent of streets in accepting the work of the improvement of Clanton Street between San Pedro Street and Central Avenue, and in issuing his assessment warrant therefor, having been continued until this hour, the same was taken up for hearing, G. J. Leovy, Esq., appeared on behalf of the appellants. Mr. Toll moved

that said appeal be sustained and that said acts and determinations of the street superintendent in accepting said work and in issuing said assessment, warrant, and diagram, be reversed and set aside, and that the contractor for said work be required to do such work to the satisfaction of the city council, and in accordance with the plans and specifications, which motion was seconded by Mr. Baker and carried." Between the time of filing the protest and the eighteenth day of June, 1900, following, the contractor did additional work upon said street in the way of placing more gravel thereon, repairing curbs and the like, and on the last-mentioned date all those who had signed the protest signed and filed with the council a written request that said council should rescind its previous action as to the protest and "deny said protest and said appeal from the said acts and determinations of the said street superintendent." It was recited in said request, "That such arrangements have been made and had between your said protestants, and each of them, and the contractor who performed said contract No. 972, as that all disagreements have been amicably adjusted and to the satisfaction of said protestants." The plaintiffs did not sign either the protest or the written request. It seems, however, to be conceded that the order sustaining the appeal had the same effect upon plaintiffs' rights as it would have had if they also had signed the protest. This written request was referred by the council to its board of public works, and said board reported and recommended that the request be granted. This report was duly adopted by the council and it then denied or attempted to deny the previous appeal and confirmed the action of the street superintendent in accepting said work and issuing said assessment and warrant. It was upon the theory that this last decision of the council was valid that the trial court refused to quiet plaintiffs' title to their said lots, and adjudged the assessment bond subsequently issued to be a lien on the property. Respondents make two points in support of the action of the court.

1. They say that the protest filed with the council did not constitute an appeal. This contention cannot be upheld. One ground of appeal to the council given by the statute is "that the work has not been performed according to the contract in a good and substantial manner." (Stats. 1885, p. 156, sec. 11.)

The statute also provides in the same section that the appeal may be taken "by briefly stating their objections in writing, and filing the same with the clerk of said council." It was, therefore, sufficient to briefly state in writing that "said work has not been performed according to the specifications and terms of said contract" as a ground of protest, and file the same with the clerk. This would be readily understood as an appeal from the action of the street superintendent, and was in fact so understood and acted upon by the council and all parties concerned, and no one was in any way misled to their prejudice by the form of the appeal. (*Girvin* v. *Simon,* 127 Cal. 491; *Belser* v. *Hoffschneider,* 104 Cal. 455.)

The foregoing is taken from an opinion prepared by Commissioner Gray in this case, while it was pending in department, and is now adopted as the opinion of the court.

2. In *Williams* v. *Bergin,* 108 Cal. 169, and *Belser* v. *Hoffschneider,* 104 Cal. 455, it was held that when in proceedings to improve a street the city council has sustained an appeal taken in pursuance of section 11 of the Vrooman Act, it has no power thereafter to rescind its action in that respect. That portion of the action of the council, upon the request of the property-owners, which purports to rescind its previous action in sustaining the appeal, is therefore ineffectual and void. The council had no power to rescind or vacate its previous action in the matter.

The only ground of the appeal to the council was that the work had not been performed according to the contract. By section 11 of the Vrooman Act, the council upon such an appeal has power to set aside the assessment, and require the work to be completed according to its own directions, and to direct the superintendent of streets either to correct the assessment already made or to make and issue a new one. The appeal did not attack the assessment in any particular, but, as it appeared that on April 25, 1900, the work had not been fully performed, its issuance on that date was premature, and the council, when it sustained the appeal, very properly set aside the assessment. But, so far as its form and the amounts of the several liens thereby declared are concerned, its accuracy and sufficiency was not, and has not been, questioned. Doubtless, under section 11 aforesaid, at any time after sustaining the appeal, the council, upon ascertaining

to its satisfaction that the work was really done according to the contract, and finding the previously prepared assessment ready to its hand and correct in all respects, could have adopted it and ordered that it be issued as the assessment for the completed work; or it could have ordered that a new assessment be made and issued, and if in that case the street superintendent had redated and reissued the former one, it would have been valid. But it is clear from the record that the council did not take, nor attempt or intend to take, either of these courses. Its intention, as plainly expressed, was to rescind its order sustaining the appeal and thereupon to deny the appeal, treat the case as if there had been no appeal, and allow the previous act of the street superintendent to stand confirmed and valid from the beginning. Its intention was that the assessment should be effective as of its original date, and as issued on April 25, 1900. That this was the understanding of all the parties concerned, including the respondent, is shown by their subsequent action. It was on June 18, 1900, that the council attempted to confirm the previous assessment. If this could be treated as, in substance, a reissuance of the old assessment in lieu of making a new one, it could not take effect as a valid assessment until the day it was so reissued. Yet we find that the street superintendent, treating the assessment as having been issued on April 25, 1900, and the return made thereon by the contractor on May 23, 1900, as a valid and effectual return, issued to the city treasurer, on June 25, 1900, a certified list of all assessments which had remained unpaid for thirty days, including the assessment on the plaintiffs' lots, and on the same day the treasurer issued the bonds to the respondent company for the assessment on these lots. If the assessment had been reissued on June 18th, the owner would have had at least until and including July 17th to notify the treasurer not to issue the bonds.

The council was without power thus to infuse life and validity into the former assessment and make it effective from its date. The assessment stands vacated and the bonds of the respondent company are necessarily void. The proceeding is still pending before the council on the appeal, and if the work is completed that body still has power to direct a new assessment or the reissuance of the former one with the ac-

companying diagram and warrant. The bondholder, as assignee of the contractor, is possessed of all his rights to receive payments of the assessments when issued, and to demand bonds if payment is not made for thirty days, but until said assessment is issued it has no active subsisting lien on the lots. The plaintiffs were therefore entitled to have their title quieted as against any lien claimed by the respondent company in virtue of the assessment or bonds set forth in the answer. This would not affect its right to acquire a lien upon proper proceedings.

The proceedings here involved took place in the year 1900. By the amendment of 1899 to section 4 of the Street Bond Act, it was provided that, as to proceedings thereafter had, the issuance of the bond should be only *prima facie* evidence of the regularity of the proceedings, instead of conclusive evidence, as theretofore. Being *primâ facie* evidence only, its effect is simply to change the burden of proof as to irregularities, and where the record is produced showing what was actually done, it has no curative effect as to irregularities appearing thereon.

The judgment is reversed and the cause remanded, with directions to the court below to enter judgment for the plaintiffs on the agreed statement of facts, in accordance with this opinion.

Angellotti, J., Van Dyke, J., Henshaw, J., Lorigan, J., and Beatty, C. J., concurred.