· [Civ. No. 2466. First Appellate District.—June 26, 1918.]

FEDERAL CONSTRUCTION COMPANY (a Corporation), Petitioner, v. GEORGE KNEESE, as Superintendent of Streets, etc., Respondent.

STREET LAW—IMPROVEMENTS UNDER ACT OF 1911—RESOLUTION OF INTENTION—NAMES OF STREETS.—In street improvement proceedings under the Improvement Act of 1911 (Stats. 1911, p. 730), the streets to be improved need not be mentioned by their official names in the resolution of intention, but may be referred to by the names by which they are commonly known.

ID.—UNCERTAINTY AS TO LOCATION OF LINES—DEFECT IN RESOLUTION OF INTENTION CURED BY PLANS AND SPECIFICATIONS.—Uncertainty as to the location of certain lines in the resolution of intention is cured by the plans accompanying the resolution and the specifications referred to therein, wherein the location of such lines is made certain.

ID.—CHANGE OF GRADE—PROCEEDINGS UNDER ACT OF 1909—HEARING OF PROTESTS—PERSONS ENTITLED TO NOTICE.—In a proceeding for the change of the grade of a street under the Change of Grade Act of 1909 (Stats. 1909, p. 1018), the proceeding is valid, notwithstanding upon the hearing of protests notice was only given of the hear-

ing of such protests to the persons protesting, since under such act no notice is required to be given of such hearing to nonprotesting owners.

APPLICATION for a Writ of Mandamus originally made to the District Court of Appeal for the First Appellate District to compel a superintendent of streets to sign a contract for street improvement.

The facts are stated in the opinion of the court.

Raymond Benjamin, and A. C. H. Hart, for Petitioner.

George Appell, for Respondent.

Heller, Powers & Ehrmann, for Intervener.

BEASLY, J., *pro tem.*—The Federal Construction Company petitions for a writ of mandate to compel the superintendent of streets of Daly City to sign a contract for the improvement of certain streets of that municipality pursuant to proceedings taken by its board of trustees under the Improvement Act of 1911 (Stats. 1911, p. 730), in conjunction with the act amendatory thereof of 1915 (Stats. 1915, p. 1464).

The case is an amicable one instituted for the purpose of determining the validity of the proceeding involved to the point which they have reached.

The first objection to the proceedings is that the streets involved are not mentioned by their official names in the resolution of intention. It is provided in section 3 of the Improvement Act of 1911 (Stats. 1911, p. 733) that the streets to be improved may be referred to by the names by which they are commonly known, and this was done.

The next objection is that the resolution of intention is uncertain in some particulars. The plans, however, which accompanied the resolution of intention, and the specifications that are referred to therein, if we understand counsel correctly, answer these objections by making the lines, which it might be impossible to locate if the resolution of intention stood alone, quite certain as to location.

Another objection to the resolution is that it cannot be determined therefrom whether a certain strip of vitrified

brick pavement excepted from the work to be done is in existence or to be hereafter constructed. It is plainly said in the resolution that this pavement is "to be constructed." This can only mean that it is to be constructed in the future, of course.

Other criticisms are aimed at the resolution and plans and specifications; but with all respect to counsel, who have so ably presented this matter as to lighten the labor of the court, we think them inconsequential.

The reference in the resolution of intention embraces matters concerning which the resolution may properly refer to the plans and specifications for a more particular description of the work; and the reference itself is sufficient for this purpose.

This disposes of criticisms aimed at the resolution of intention. It seems to be sufficient.

As we understand the next contention of counsel opposing the issuance of the writ, it is that the improvement is to be to a grade attempted to be established by a proceeding for change of grade had under chapter 677 of the Statutes of 1909 (Stats. 1909, p. 1018), and that the attempt in that proceeding to change the grade was futile because of the failure to give notice of the hearing of certain protests against the change of grade that were filed in that proceeding. It is stipulated by all the parties to this proceeding that the resolution of intention to change the grade was duly passed as provided by chapter 677 of the Statutes of 1909, and that notice thereof was given in the manner provided by section 2 of that chapter. The protests which were filed were made by owners of less than a majority of the property fronting on the streets where the change of grade was proposed to be made. The act under which the proceeding was had provided that the board of trustees should fix a time for hearing such protests, and give notice thereof in the manner therein specified to be given; and it was further provided that the board of trustees should hear said protests at the time and place appointed, or at any time to which the hearing thereof might be continued, and pass upon the same, and that its decision thereon shall be final and conclusive. While no notice was given of the hearing, the persons signing the protests did actually all appear before the board of trustees and present their protests, and were heard upon the same,

except that in one instance the protestant did not appear personally, but did appear by his son, who, it is stipulated represented him in the matter. It is now contended that this son did not have authority to represent this protestant, his father; but the stipulation is broad and can mean nothing if it does not mean that the son had such authority.

It is argued on behalf of the petitioner that the appearance by the protesting property owners before the board of trustees, and the hearing then given them, was all that was necessary to give the board jurisdiction to proceed with the work; that the reason for the publication of the notice was simply to apprise the protestants of the time and place of the hearing of their protests, and the notice was not addressed to any other person, and that they having been heard and their protests denied, the board thereupon acquired jurisdiction to proceed. On the other hand, the contention is made by the respondent that the purpose of the publication of the notice was to give notice to all persons owning property fronting upon the streets the grade of which it was proposed to change, whether protesting or not protesting; and, therefore, the fact that the actual protestants appeared before the board and were heard does not give the board jurisdiction, as it is said, to proceed with the work although the protests were denied.

With this latter contention we are unable to agree. Throughout the whole of section 3 of the act under which the proceeding for change of grade was taken, in mentioning who were to be heard upon the protests the legislature has used the words ''such protests'' and ''said protests,'' referring definitely to the protests filed and to no other persons or objections whatever. No other construction can be given to the language of that lengthy section than that the protests to be heard were the protests which were filed, and none other. One reason for the adoption of the method of publication or posting instead of a personal service of notice of the hearing is the common one, that it was easier to meet the difficulty of serving a large number of persons by this substituted method—if it may be so called—than by seeking out the persons protesting at their various residences or places of business, and personally serving them there. Perhaps it might also have been considered less expensive and more certain, and its proof less open to the infirmities of oral

testimony, than a personal service. There is another sentence of section 3, however, which seems to us to conclusively point to the intention of the legislature as to who should be heard upon these protests. After providing for the nature and contents of the protests it is said that "Any protest not complying with the foregoing requirements shall not be considered by said city council." This, if the contention of the superintendent of streets be correct, would exclude from hearing an informal protest actually filed, and at the same time permit hearing a person who had not protested at all. That the legislature intended such a result is not reasonable to suppose. It is settled in *Farley* v. *Reindollar*, 174 Cal. 706, [165 Pac. 19], that property owners not protesting cannot object to the disposition of protests to which they are not a party. It follows that if the nonprotesting property owners could not object to the disposition of the protests, the notice was not for their benefit. *Gray* v. *Burr*, 138 Cal. 109, [70 Pac. 1068], relied upon by the respondent in this case, is not in point, because in that case the protest was by the owners of a majority of the frontage, and the resolution ordering the work was passed without giving the protesting owners any opportunity to be heard at all.

Other cases relied upon by respondent are *Creed* v. *McCombs*, 146 Cal. 449, 452, [80 Pac. 679], *Southern Construction Co.* v. *Howells*, 21 Cal. App. 330, [131 Pac. 756], *Girvin* v. *Simon*, 127 Cal. 491, [59 Pac. 945], *People* v. *O'Neill*, 51 Cal. 91, and *Mahoney* v. *Braverman*, 54 Cal. 565. All these were cases where the notice which was not given was a notice of a hearing on an assessment for street work. Typical of the language of those cases is that of Mr. Justice James, of the second appellate district, in *Southern Construction Co.* v. *Howells,* as follows: "The city council, when it proceeds to give a hearing on an appeal against a street assessment under this act, cannot assume jurisdiction to make any order of determination therein until all property owners affected by the assessment, whether parties to the appeal or not, have been given notice of the hearing. There is but one way provided by the statute for the giving of this notice, and that is that it shall be published for five days." There is, however, a fundamental distinction between the notice required in a proceeding for

change of grade under the statute followed in the proceeding under review, and the notice of an assessment in a street improvement case. The protest of the protesting party in the case of an assessment, if granted, to the extent of either reducing his assessment or relieving him altogether from payment of that portion of the cost of the work assessed against his property, necessarily has the effect of raising the assessments of all the other property owners, whether they have protested or not. Therefore, they will be affected injuriously if the protest is granted. On the other hand, the Change of Grade Act of 1909, under which this proceeding was begun, provides for only two results upon the hearing of a protest on the change of grade. One of those results is the denial of the protest, following which the entire grade of the street would be changed as provided in the resolution of intention and the plans and specifications. On the other hand, if the protest is granted the whole proceeding stops. There is no middle course. The proposed grade is either abandoned or adopted *in toto* as planned and in accordance with the resolution of intention. Therefore, nonprotesting property owners lose nothing of which they have not had previous notice by not being given an opportunity to be present at the hearing of the protests against the change of grade. We think the change of grade so established by the proceeding under examination was valid.

Judgment for plaintiff that a peremptory writ issue as prayed.

Kerrigan, J., and Zook, J., *pro tem.*, concurred.