ELI MAYO, APPELLANT, *v.* RACHEL MAZEAUX, MARGARET HARRIS, MICHAEL DAILY, HENRY BOWMAN AND WILLIAM LANDEGAN, RESPONDENTS.

PRACTICE ON THE ADMISSION OF EVIDENCE.—It is the better practice to decide on the admissibility of evidence when it is offered ; but if the rule be departed from, it is the duty of the Court, at a subsequent stage of the case, to rule upon the point distinctly, and if the evidence be excluded, to state on what ground.

DESCRIPTION OF LAND IN A DEED OF CONVEYANCE.—In construing a deed of conveyance, in which the land intended to be conveyed is described by reference to certain degrees of latitude, and also to a certain map therein specifically described, the degrees of latitude and other imaginary lines will be discarded, as less certain and reliable than the map.

EVIDENCE—CERTIFIED COPIES OF RECORDED INSTRUMENTS.—It is well settled that certified copies of instruments duly recorded may be read in evidence without proof of the execution of the originals.

PRESUMPTION OF THE EXECUTION OF RECORDED INSTRUMENTS. —If an instrument be duly recorded, it furnishes sufficient *prima facie* evidence that it was duly executed.

WHAT IS NECESSARY TO MAKE COPIES OF RECORDED INSTRUMENTS EVIDENCE. — To authorize certified copies of recorded instruments to be read in evidence, it must be shown that the originals are not under the control of the party, unless the proof of that fact be waived by the adverse party.

WAIVER OF INTRODUCTORY PROOF. —If the objection to the admission of a certified copy of a duly recorded instrument in proof be that the instrument is "not duly certified and proved," it will be held to be a waiver of the objection that the original was not produced, or not shown to be under the control of the party offering the evidence.

APPEAL from the District Court of the Sixth District, Sacramento County.

The case is stated in the opinion.

*P. Dunlap*, for Appellant.

*H. O. Beatty*, of Counsel.

*John Heard*, for Respondents.

CROCKETT, J., delivered the opinion of the Court:

This is an action to recover possession of a lot in the City of Sacramento, and the plaintiff claims to have deraigned his title from John A. Sutter, under a confirmed Mexican grant, and a patent thereon from the Government of the United States. The answer is a general denial of the plaintiff's title, and an allegation of title in the defendants. On the trial the defendants offered no proof of title, and the case turns upon the sufficiency of the plaintiff's proofs, to overcome the presumption of title arising from the possession of the defendants. The plaintiff first put in evidence the patent to Sutter, which includes the lot in contest, and is dated June 20, 1866, and is founded on a grant made by the Mexican Government to said Sutter in 1841, for a tract of land known as "New Helvetia," situated on the American, Sacramento and Feather rivers, and as laid down on the map which accompanied the grant, the said tract being "located according to the calls of said grant, as described and explained in the deposition of John Jacob Vioget, filed

in the case, and within the following limits : On the south
by a line drawn due east from the Sacramento river, so as
to touch the southerly point of a pond or laguna near said
river, and about five miles south of the American river, as
represented on the map on file in this case, which is marked
B. P. L.; on the north by a line drawn due east from the
Sacramento river to the southern base of the mountains
known as the Buttes, and represented on the said map by the
name of *Los tres Picos;* thence until it intersects the eastern
boundary of the tract represented on said map and described
in the grant; the said land being embraced in a survey
thereof made by Lauren Upson, United States Surveyor Gen-
eral for the State of California, and containing eleven leagues
of land, and located within the Counties of Sacramento, Yuba
and Sutter, including the land in controversy in this suit, as
shown by a copy of the map attached to said grant." The
above is an extract from the settled statement on appeal;
and though the patent is not set out in the record, it appears
from the foregoing extract that the grant was located by the
patent and decree of confirmation, according to the map
which accompanied the grant, and as described and ex-
plained in the deposition of Vioget, on file in the case.

The grant, decree of confirmation and patent establish
beyond dispute that the title to the lot in contest was in John
A. Sutter; and it only remains for us to inquire whether the
plaintiff has properly deraigned his title from Sutter.

He first offered in evidence a certified copy of a deed from
Sutter to his son, John A. Sutter, Jr., dated October 14,
1848, and recorded in a book of records made and kept by
Henry A. Schoolcraft, which book remains as a book of
record in the office of the County Recorder of the County of
Sacramento. The defendants objected to the admission of
this deed in evidence, on the ground, First—That the lot sued
for is not embraced in said deed; and, Second—That "the
said instrument is not duly certified or proved." The Court
admitted the copy in evidence for the time being, but reserved
its ruling as to its competency until after the plaintiff had
closed his documentary evidence. At the close of the testi-

mony for the plaintiff, the Court excluded the deed, but did not state on what ground.

We cannot too strongly condemn the practice adopted in this case, and which is of frequent occurrence in the District Courts, of admitting testimony subject to exceptions, and reserving the ruling upon it until a later stage of the case, and afterward omitting to decide the point, or failing to state on what ground the evidence is rejected, if it be excluded. This loose practice often leaves it doubtful whether the particular evidence was excluded or not, or was considered by the Court as an element in its decision. If rejected, it may have been on a point which the party might have supplied, if the decision had been made at the proper time. Without intending to lay down an inflexible rule on the subject, we deem it the better practice to decide upon the admissibility of evidence when it is offered; but if the rule be departed from, it is clearly the duty of the Court, at a subsequent stage of the case, to rule upon the point distinctly, and if the evidence be excluded, to state on what ground.

The deed from Sutter to his son, which was excluded, describes the tract conveyed as " all that certain lot, piece, tract or parcel of land, situate, lying and being in the said Territory of Upper California, commencing on the north in latitude 39 deg. 33 min. and 45 sec., at a point on the east bank of the Rio de Sacramento, at said latitude; running thence east to the Rio de las Plumas, and three leagues beyond said river; thence south to latitude 38 deg. 41 min. and 32 secs.; thence west to the said Rio de Sacramento; thence in a northwesterly direction up and along the course of said river Sacramento to its intersection with said Rio de las Plumas; thence in a westerly direction up and along the course of the said Rio de Sacramento to the place of beginning; containing about eleven leagues of land, be the same more or less; excepting and reserving out of said mentioned tract of land a certain piece or parcel of land, situate, lying and being east of the said Rio de Sacramento, and bounded on the north by latitude 39 deg. 1 min. and 45 secs., and on the south by the Rio de los Americanos, and granted by the Republic of Mexico to one Elias Grimes. For a more par-

ticular description of the above mentioned property, reference is hereunto made to a certain map of said premises, surveyed and made by John J. Vioget, and now in the archives of the Government of said Territory of Upper California, and also to two certain grants to the said John A. Sutter, of said described premises, dated, respectively, the one on the eighteenth day of June, in the year one thousand eight hundred and forty-one, and the other in and about the month of November, in the year one thousand eight hundred and forty-four."

By an addendum to the deed, made on the 19th day of November, 1848, and signed by both the grantor and grantee, there is also excepted from the grant several tracts situate on the Yuba and Feather rivers, before then conveyed to other persons; and "also one half-mile of land lying in Sutterville, and conveyed to one Lansford W. Hastings, sometime in the year one thousand eight hundred and forty-five."

The first objection made by the defendants to the admission of this deed in evidence, is on the ground, as alleged, that it appears on the face of the deed that the description therein contained does not include the site of Sacramento City, and consequently does not include the lot in contest.

The argument in support of this proposition is, that the north and south lines are fixed only by degrees of latitude, and not by visible monuments; that we must take judicial notice of the location of the City of Sacramento, the Capital of the State; and that, in this method, as well as by the map put in evidence by the plaintiff, it appears that latitude 38 deg. 41 min. and 32 sec., which is the southern line of the tract conveyed by Sutter to his son, by the deed we are considering, is some eight or ten miles north of the city, and consequently cannot include it. If we were to be governed in locating the tract exclusively by the lines of latitude mentioned in the deed, without reference to other descriptive calls, the position of defendants' counsel would doubtless be impregnable. But the deed furnishes other, and more conclusive evidence, as to the tract intended to be conveyed. It refers, for a *more particular* description of the *above men-*

*tioned property* to a "certain map of said premises surveyed and made by John Jacob Vioget, and now in the archives of the Government of the said Territory of Upper California;" and, also, to two grants to Sutter "of said *described premises*," one of which is dated June 18, 1841. It appears from the statement on appeal that the patent to Sutter, which includes the City of Sacramento, was founded on a grant made to him by the Mexican Government on the 18th of June, 1841, "as laid down on the map which accompanied the grant;" and that the land was "located according to the calls of the said grant, as described and explained in the deposition of John Jacob Vioget filed in the case," and within the limits contained in the patent. There can be no reasonable doubt that the map referred to in the patent, as the one which "accompanied the grant," is the same map referred to in the deed as having been made by Vioget, and "now in the archives of the Government of the said Territory of Upper California;" and it was upon the calls of the grant, in connection with this map, as explained by the deposition of Vioget, that the tract was finally located, as defined in the patent. This, we think, is evident from the patent and the deed, without other extraneous proof. It appears, therefore, on the face of these two papers, construed together : First— That on the 18th of June, 1841, there was granted to Sutter a tract of about eleven leagues on the east bank of the Sacramento river. Second—That the grant was accompanied by a map made by Vioget, which defined the land granted. Third—That it was finally located according to the calls of the grant, as described and explained by Vioget. Fourth— That such final location, as embodied in the patent, includes the City of Sacramento. Fifth—That the land granted on the 18th of June, 1841, and represented on Vioget's map, on file in the archives, is the same tract which Sutter intended to convey to his son by the deed of the 14th October, 1848, in which he refers to the map and grant "for a *more particular* description of the above mentioned property." The grant referred to in the deed for "a more particular description" of the property, has been finally located by the proper authorities, and the patent is conclusive evidence, as against

these defendants, of the correctness of the location. Under these facts, we are bound to presume, that in locating the grant the proper authorities of the United States had sufficient reasons for locating it, as defined in the patent; and we must assume that in describing it by certain degrees of latitude in his deed to his son, Sutter made a mistake, which can be corrected by reference to the grant and map, to which he refers "for a more particular description" of the property. (*Vance* v. *Fore*, 24 Cal. 435.) But, if we had the least doubt on this point, it would be solved by the fact that there is excepted from the land conveyed a tract at Sutterville, several miles south of the City of Sacramento, which proves beyond cavil that Sutter intended the southern line of the land surveyed to be at least as far south as Sutterville. We are, therefore, of opinion that the deed includes the lot in contest. In construing this deed we discard the degrees of latitude and imaginary lines, as less certain and reliable than the map which accompanied the grant, and which the United States Courts adopted, as affording the most certain data for locating the grant.

The next objection to the admission of the certified copy of the deed was, that "the said instrument was not duly certified and proved." This objection is based on the fact that, instead of being recorded in the regular books of record, it was recorded in what are known as the "Schoolcraft" record, which are books of record kept by one Henry A. Schoolcraft, prior to the organization of the State Government. But in 1853, an Act was passed to validate these records, which provides that they shall "be deemed legal records, and all instruments therein recorded shall have the same force and effect in law, as if duly recorded in the appropriate books of record of such County; * * * and all copies thereof, duly certified or proved, shall have the same force and effect as other copies of records of said office." (Stats. 1853, p. 227.) It is insisted that under this statute, a certified copy of a deed recorded in these books is not admissible in evidence, without proof of the execution of the original, and that it is not in the power of the party to produce it.

It is well settled that a certified copy of an instrument *duly* recorded, may be read in evidence without proof of the originals, if it be shown to the satisfaction of the Court that the original is not under the control of the party. (*Hicks* v. *Coleman*, 25 Cal. 122; *Hurlbutt* v. *Butenop*, 27 Cal. 50; *McMinn* v. *O'Connor*, *Id.* 238.) If the instrument be duly recorded, this fact of itself furnishes sufficient *prima facie* evidence that it was duly executed; and the original, if produced, may be read in evidence without further proof. But to authorize a certified copy to be read, it must be shown that the original is not under the control of the party, unless the proof of that fact be waived by the adverse party. If, therefore, the deed from Sutter to his son had been duly recorded in the regular books of record, kept by the Recorder under the Recording Act, it would not be open to discussion that a certified copy of it would be admissible in evidence, on proving that the original was not under the control of the party. It was the evident intention of the Act of 1853, to place the books of record kept by Schoolcraft on precisely the same footing with the regular books of record, kept in accordance with the Recording Act. A certified copy from these records is admissible in evidence on precisely the same conditions which pertain to copies from the regular records kept by the Recorder; and the certified copy of the deed from Sutter was clearly admissible, on proof that the original was not under the control of the party. But the necessity for such proof may be waived by the adverse party; and it is always deemed to be waived, unless the objection is made when the copy is offered. It is too late to object, for the first time in this Court, that no such preliminary proof was made. If the point be made when the copy is offered in evidence, it might be in the power of the party to obviate it by making the requisite proof; but to permit the copy to go in without raising this point, and afterwards to make the objection in this Court for the first time, is a practice which, if tolerated, would work a gross injustice and a manifest surprise upon the opposite party.

When the copy of the deed from Sutter was offered in evi-

dence, it was objected to on two grounds only, to wit : First—Because the lot sued for is not embraced in the deed ; and Second—Because the instrument is "not duly certified and proved ;" but no objection was made on the ground that the original was not produced, or shown to be not under the control of the plaintiff. This objection was therefore waived, and the point cannot be raised for the first time here.

On the whole, we think the Court erred in excluding the certified copy of the deed ; and, as the judgment must be reversed on this ground, which appears to be decisive of the action, we deem it unnecessary to discuss the question arising on the deeds from Mesick to Foote.

Judgment reversed, and new trial ordered.