[L. A. No. 986. Department One.—December 24, 1901.]

## L. A. GRANT et al., Appellants, v. MARGARET S. BARBER et al, Respondents.

STREET ASSESSMENT—INSUFFICIENT COMPLAINT—DESCRIPTION OF WORK —DELEGATION OF POWER TO STREET SUPERINTENDENT.—A complaint in an action upon a street assessment, which sets forth a resolution of intention to do the work according to certain specifications adopted by the council, which were stated in the complaint, and which specified that the contractor "shall put in such culverts as the street superintendent shall direct," and failed to specify the places and materials for the culverts, shows a failure of the council sufficiently to describe the work, and also an improper delegation of power to the street superintendent, which vitiates the street assessment, and does not state a cause of action.

ID.—CULVERTS INDICATED IN PLANS AND PROFILE.—Inasmuch as the objectionable specification does not limit the authority of the superintendent to any particular number of culverts, an averment in the complaint that the plans and profile described only two culverts, which were to be constructed by the railroad company, does not remove the objection to the specification.

ID.—CONSTRUCTION AT COST OF CONTRACTOR—UNCERTAINTY OF WORK— COMPETITION AMONG BIDDERS.—The fact that the specification provided that the culverts directed by the street superintendent were to be constructed at the cost of the contractor does not affect the rule against the validity of the specification. Though the cost of the improvement would not be changed after the letting of the contract, the price at which the work would be awarded would vary, according to the uncertainty of the work to be done, and competition among bidders would be materially affected.

APPEAL from a judgment of the Superior Court of Los Angeles County. M. T. Allen, Judge.

The facts are stated in the opinion of the court.

Isidore B. Dockweiler, and Dockweiler & Carter, for Appellants.

C. W. Chase, for Respondents.

HARRISON, J.—Action upon a street assessment.

The city council of Los Angeles passed a resolution of intention, and thereafter an ordinance, that Figueroa Street, between certain termini, be graded, graveled, and guttered with an asphalt gutter "in accordance with the plans and profile on file in the office of the city engineer and specifications on file in the office of the city clerk of the city of Los Angeles, said specifications being designated special specifications for the grading, graveling, and guttering of Figueroa Street from the north line of Adams Street to the southerly boundary line of the city of Los Angeles." A contract for doing the work described in said resolution was entered into between the street superintendent and the plaintiffs herein, and, upon its completion, they received an assessment therefor, upon which the present action was brought. The resolution of intention, together with the specifications referred to therein, and the contract with the superintendent, are set forth in the complaint. The specifications had been adopted by the city council prior to the passage of its resolution of intention, one of which was as follows: "The contractor shall provide for drainage under all banks that it may be necessary for him to make across ravines or drainage channels, and he shall put in such culverts as the street superintendent may direct, and at his own cost." A demurrer to the complaint was sustained by the superior court, and from the judgment thereon the plaintiffs have appealed.

Under the Street Improvement Act, it is the duty of the common council "to describe the work" which it is authorized to order, and its want of power to delegate this duty to any other officer or tribunal is a principle so well established, not only by the statute, but also by various decisions of this court thereunder, as not to need citation of authorities. The point to be considered, whenever the question is presented in any particular case, is whether the council has attempted to dele-

gate such authority. The description of the work to be done may be placed in specifications annexed to the resolution of intention, of which they will then form a part, as well as in the body of the resolution itself, but in neither case can the council delegate to the superintendent of streets the function of determining the extent of the work to be done, or whether it shall be performed. The ordinary function of specifications is, as the term imports, a statement in detail of the several parts of the improvement, including a description of the manner in which the work is to be done, and the materials with which it is to be constructed. But if they provide for work which is not described in the resolution of intention, or for delegating to the superintendent of streets the right to determine whether such work shall be done, or the materials to be used, an assessment therefor will be invalidated. The provision in section 6 of the act, that "the materials used shall comply with the specifications, and be to the satisfaction of the superintendent of streets," clearly indicates that the materials with which the improvement is to be made must be determined by the council, and that the function of the superintendent in reference thereto is limited to determining whether those which are used comply with the contract. An ordinance for the construction of a sewer which would require it to be built of such size and materials as the superintendent should direct would be an unauthorized delegation of authority to that officer.

In the present case, before the passage of the resolution of intention, the common council adopted special specifications for the grading of Figueroa Street, setting forth with great minuteness the manner in which the grading was to be completed, and made those specifications a part of its resolution of intention. The council must be assumed to have known the configuration of the ground upon which the work was to be done, and the provision in its specifications, that the contractor should provide for drainage under all banks that it might be necessary for him to make across ravines or drainage channels, was doubtless inserted in view of such knowledge. Under this specification a bidder could intelligently comprehend the amount of work to be done and estimate its cost, and the superintendent, under his statutory authority, could determine whether the work was performed in accordance

with the contract. But the clause requiring the contractor to put in "such culverts as the street superintendent may direct" gave to that officer the right not only to determine the places at which the culverts should be built, but also their size and the materials out of which they should be constructed, whether of wood, or of brick, or of stone. If it was necessary to construct culverts at any place along the line of grading, the council should have designated such places, as well as the materials of which they were to be constructed, and not have left the determination of that question to the judgment or caprice of another.

It is alleged in the complaint "that said plans and profile referred to in the specifications did not require or call for the construction of any other culverts whatsoever, except two, each to be under the tracks of the Southern Pacific Railroad Company where the same cross the gutter on each side of said Figueroa Street, and which said two culverts were to be and were actually constructed by said railroad company." The objection to the proceeding is not removed by this allegation. The resolution of intention, as well as the contract, provide that the improvement was to be made in accordance with the plans and profile *and* the specifications. "The plans and profile" are not set forth in the record, and would, presumptively, be limited to an outline, or map, of the ground along which the cuts and fills were to be made in order to bring the roadway to the official line. The specification above quoted does not limit the authority of the superintendent to the two culverts named in the complaint, and the fact of inserting this clause in the specification indicates that such was not the purpose of the council.

Neither is the rule varied by reason of the provision that the culverts are to be constructed at the cost of the contractor. While the cost of the improvement would not be changed after the contract had been entered into, the price at which it would be awarded would vary according to the uncertainty of the work to be done, and competition among bidders would be materially affected. Under such a condition the bidder would naturally make his proposal in view of the cost of the most expensive material that might be required by the superintendent, and whether he did or not, the uncertainty of the number of culverts, and the materials from which they were to be con-

structed, would prevent the owner from electing to do the work at the price it might be awarded.

In *Haughawout* v. *Hubbard,* 131 Cal. 675, cited by the appellant, the contract was for building a sewer, and the contractor was to excavate a trench therefor along its route, which should have a sufficiently solid foundation upon which the sewer might rest. The specifications in reference thereto were held to be merely the details of its construction, which the superintendent was to supervise, and gave to him only such authority as he was required to exercise by virtue of the general powers of supervision given to him by the statute, and consequently could not be regarded as a delegation to him of any function which the city council was required to exercise. Instead of holding that the council could delegate any of its functions to the superintendent, the case expressly affirms the cases in which the right of such delegation has been denied. In the present case, however, the superintendent is given authority to direct the performance of work of a substantial character which should have been designated by the council.

The judgment is affirmed.

Garoutte, J., and Van Dyke, J., concurred.

Hearing in Bank denied.