[Sac. No. 1127. Department Two.—September 5, 1905.]

A. G. BROWNLEE, and ALICE BROWNLEE, etc., Appellants, v. GEORGE J. REINER, and SISKIYOU COUNTY BANK, Respondents.

APPEAL—JUDGMENT—LAPSE OF TIME—DISMISSAL.—An appeal from a judgment, taken after the lapse of six months from the entry of the judgment, cannot be considered, and will be dismissed.

ID.—ORDER DENYING NEW TRIAL—REVIEW UPON APPEAL.—Upon appeal from an order denying a new trial the sufficiency of the findings or of the legal conclusions to support the judgment and the

CXLVII. Cal.—41

question as to whether the appellant is entitled to a different judgment cannot be reviewed. Where the findings cover the issues and are supported by the evidence the only questions left for review relate to rulings upon the admissibility of evidence.

ACTION TO ENFORCE DEED—EVIDENCE—AGENCY—CROSS-EXAMINATION.— In an action to compel a deed of a mine upon which plaintiffs held an option to purchase and had contracted to sell it to defendant, who, under a modified contract, had dealt with the owner, where the owner had testified for plaintiffs that he dealt with defendants as their agent, it was proper on cross-examination to ask what he had said upon that subject.

ID.—EXPLANATION OF PLAINTIFFS' REASONS—RULINGS UPON EVIDENCE.— Where the modified contract recited that plaintiffs having the option were unable to sell the mine, it was proper to exclude evidence as to why they could not sell the property; and where plaintiff ratified the deed from the owner to the defendant, and had given a long explanation of the reason why this was done, it was not ground for new trial to rule out a question whether there was any other reason.

ID.—SECONDARY EVIDENCE—COPY OF TELEGRAM—RULING NOT PREJUDICIAL.—A copy of a telegram from plaintiffs to defendant and his alleged partner was properly rejected as secondary evidence where the latter were present in court and no demand was made for the production of the original telegram received by them; and where there is no apparent materiality of the telegram which appears in the record, the rejection of the evidence, if erroneous, could not be prejudicial.

ID.—IRRELEVANT TESTIMONY.—Offers of testimony which were irrelevant to any issue in the case were properly rejected.

APPEAL from an order of the Superior Court of Siskiyou County denying a new trial and dismissal of appeal from the judgment. J. S. Beard, Judge.

The facts are stated in the opinion of the court.

John H. Magoffey, and Bradley & McKinstry, for Appellants.

R. S. Taylor, and Gillis & Tapscott, for Respondents.

McFARLAND, J.—Plaintiffs appeal from an order denying their motion for a new trial. The transcript also shows an attempted appeal from the judgment; but said attempted appeal cannot be considered because it was not taken within six months after the entry of the judgment.

The main purpose of the action was to obtain a judgment decreeing that the defendant George J. Reiner convey to plaintiffs certain mining property known as the Schroeder Consolidated Quartz Mine. The Siskiyou County Bank is made a defendant for the purpose of restraining it from delivering to the said defendant Reiner a certain deed of said mine held in escrow by the bank; but this feature of the case is merely incidental to the main purpose. The court decided that plaintiffs were not entitled to a deed of conveyance of said mine from defendant Reiner; and if that decision stands there is no reason for disturbing any other part of the judgment.

The most important parts of the argument of counsel for appellants go to points which cannot be considered on an appeal from an order denying a motion for a new trial—as, for instance, that "the findings of the court do not support the judgment," and that "plaintiffs are entitled to a decree for the whole of the Schroeder mine." The only points available to appellants on the record here presented are, that the evidence is not sufficient to justify the findings, and that there occurred at the trial, in ruling on the admissibility of evidence, errors of law of sufficient importance to warrant a reversal of the order denying a new trial. And as to the first point it is enough to say that there was sufficient evidence to support the findings.

In order to intelligently present and consider the question whether the court committed any error in ruling on the admissibility of evidence, and whether if there was any such error it was material and prejudicial, it is necessary perhaps to refer briefly to some of the numerous documents and transactions out of which this litigation arose. The Schroeder mine, the property here involved, belonged on April 26, 1899, to Henry Schroeder, and on that day he executed a written instrument by which he gave to plaintiffs here a sixty days' option to buy said mine for forty thousand dollars. Afterwards, on May 19, 1899, the plaintiffs, having no interest in the mine other than said option, entered into a written contract with the defendant Reiner by which plaintiffs agreed to sell said mine to Reiner, and the latter agreed to buy the same, for the sum of one hundred thousand dollars,—fifty thousand dollars in thirty-five days, and the balance in cer- .

tain deferred payments,—a conveyance to be made by the plaintiffs to Reiner when he shall have paid all the purchase money, and Reiner to forfeit all rights if he should fail to make all of the payments. This contract was free from ambiguity; it was a usual contract for the sale and purchase of property; and by it Reiner promised to buy the mine for a certain sum due in certain payments, and plaintiffs promised to execute to him a deed of the mine upon his compliance with the terms. There was nothing in the contract about agency; the relation of the parties to it was simply that of vendor and vendee. But on the next day, May 20, 1899, the said parties entered into another written contract which referred to the contract of May 19th, and changed some of its provisions, and, perhaps, entirely rescinds it, although whether it does so is not clear. This second contract of May 20th is the one upon which the plaintiffs found their present cause of action. This contract is to a considerable extent ambiguous, vague, and contradictory in its terms—although, perhaps, not entirely void for uncertainty. If its main purpose had been to create puzzling questions for lawyers and courts, it would have been a marked success. It first refers to and states at length the provisions of the previous contract of May 19th in which the relation of the parties was solely that of vendor and vendee, and does not, at that point, make any change in the said previous contract. But it then abruptly refers to the option which plaintiffs had to purchase the mine from Schroeder for forty thousand dollars. It then proceeds as follows: "And whereas the party of the first part herein [plaintiffs] is unable to sell said property; and whereas the party of the second part herein [Reiner] may be able to sell the same and has agreed to endeavor to find a purchaser for the same, and is now engaged in the effort to find a purchaser therefor; now, notwithstanding the execution of the agreement heretofore entered into between the parties hereto, it is by the parties hereto mutually agreed . . . as follows, to wit: The said party of the second part hereby agrees to endeavor to find a purchaser for the property hereinbefore described, for such sum as he may see fit to take for such property, over and above the sum of $40,000." If this had ended the contract, it might be construed perhaps as entirely abrogating the first contract and putting in its place a mere

power to Reiner to sell for plaintiffs for any price Reiner
"may see fit to take" over forty thousand dollars,—which
practically means not less than forty thousand dollars, for
a sale for a merely nominal sum more than forty thousand
dollars would satisfy the terms of the contract. But the con-
tract proceeds as follows: "And the party of the first part
agrees with the party of the second part that if he shall on
or before the 25th day of June, A. D. 1899, pay to the said
party of the first part, the sum of $40,000, the party of the
first part will forthwith deliver to the party of the second
part a good and sufficient conveyance of the hereinbefore
described property free of all encumbrances of any kind or
character whatever, and the provisions of the agreement here-
tofore made by and between the parties hereto as to the pay-
ment of any other sum or sums of money, or the forfeiture of
any rights of the party of the second part under this agree-
ment, are hereby declared and agreed to be null and void."
The language just quoted refers to the former contract which
was a pure agreement between the parties of sale and pur-
chase, and seems to continue that contract with amounts, for-
feiture, etc., changed; moreover, the language of the second
contract, just quoted, itself clearly gives to Renier the right
to himself become the purchaser for forty thousand dollars,
and to receive a deed upon making payment. However, in
subsequent parts of the contract it is provided that if there
be any surplus of the purchase price over forty thousand dol-
lars, such surplus shall be equally divided between the par-
ties. It is also provided that Reiner may, if he choose to do
so, form a stock company to take the title to said mine, and
that he shall have the right to accept in payment of the prop-
erty "$40,000 or any sum in excess thereof that he may deem
proper, and any amount of stock in such company as the bal-
ance of the selling price of said property, and that the stock
so remaining may be treated as a surplus as aforesaid, and
may be divided between the parties hereto, in the same man-
ner as if it were money as aforesaid." The foregoing are
the main and material features of this confused and obscure
contract upon which plaintiffs rely for the judgment which
they pray for in this action. After this contract was made
the parties immediately proceeded to do things which gave
rise to more complications. The plaintiffs gave Reiner a let-

ter of introduction to Schroeder. In this letter they say that
Reiner is the man to whom they have "turned over our bond
on the Schroeder Consolidated Mine"; but it may be said
that there are other expressions in the letter tending to show
that they had not relinquished to Reiner all their interest in
the option. But Reiner then made an arrangement with
Schroeder by which the latter made a deed of the mine di-
rectly to Reiner, and deposited it in the Siskiyou County
Bank, defendant herein, to be held by the bank in escrow to
be delivered to Reiner upon his payment of forty thousand
dollars. At that time Reiner had also made a written con-
tract in his own name with two men residing at Montreal,
Canada, named Chisholm and Bell, by which Reiner agreed
to sell the mine to them for one hundred thousand dollars, to
be paid in certain installments, and Chisholm and Bell agreed
to pay that sum, and to forfeit whatever they should have
paid if they failed to make all the payments at the times
stipulated. This contract was also deposited in said bank,
and it was agreed between Schroeder and Reiner that what-
ever payments Chisholm and Bell should make on their con-
tract with Reiner should go to Schroeder on his contract with
Reiner until forty thousand dollars should have been paid,
when the bank was to deliver Schroeder's deed to Reiner.
Chisholm and Bell made two payments of fifteen thousand
dollars each, and the thirty thousand dollars thus paid was
received by Schroeder. Afterwards Reiner advanced to
Schroeder the remaining ten thousand dollars, and under the
terms of the contract Reiner was then entitled to receive the
said deed from Schroeder. It is possible that this ten thou-
sand dollars advanced by Reiner was afterwards paid him by
Chisholm and Bell; but the court found that there was no
evidence to show that fact. At all events, Chisholm and Bell
never paid at most any more than the forty thousand dollars;
and as the time for paying the balance of the one hundred
thousand dollars has expired, they have forfeited all their
rights under their contract. Perhaps the above statement of
the confusion which has followed the contracts and acts of
the various parties might have been omitted; we have made
it, however, not only as an interesting showing of the manner
by which parties may needlessly complicate their affairs, but
as necessary perhaps in passing upon the alleged errors of the

court in ruling upon the admissibility of evidence. As to the equities of the parties, it is hard to tell where they lie. The plaintiffs have received twenty-two hundred dollars as one half of the value of certain bullion taken out of the mine by Chisholm and Bell, and, according to the decree of the court, they may be entitled to receive some more money from Reiner. They never paid out any money whatever for the mine; and it is clear that the efforts of Reiner procured the forty thousand dollars which was paid to Schroeder. It does not appear whether or not the mine is of any value. The only persons who appear to have lost anything are Chisholm and Bell.

There are a large number of exceptions to rulings made on objections to offered evidence. Many of them are about trivial matters. We will specially notice some of them.

Several exceptions are to rulings allowing questions asked Schroeder on cross-examination which are asserted to be not proper as cross-examination. But these rulings were correct. The witness had made certain statements in his testimony in chief tending to show that he dealt with Reiner as agent of plaintiffs, and the questions on cross-examination clearly related to what he had said on that subject.

The contract of May 20th contains a recital that plaintiffs were unable to sell the Schroeder mine, and an objection to the question asked of one of the plaintiffs when a witness why they could not sell the property was sustained, and this ruling constitutes one of the grounds of exception. This ruling was also correct, for it was immaterial why the plaintiffs could not make the sale.

Plaintiffs having ratified the act of Reiner in taking the deed from Schroeder in his own name, one of the plaintiffs, when on the witness stand, gave quite a long explanation of the reason why this was done, and was then asked if there was any other reason, to which question an objection was sustained, and this ruling constitutes another exception. Whether or not the ruling was in a strict sense erroneous, the matter under the circumstances was too unimportant to warrant a new trial.

Plaintiffs offered in evidence a copy of a telegram from plaintiffs to Reiner and his alleged partner H. M. Herrin, and an objection that it was secondary evidence, immaterial, etc., was sustained and an exception taken. The ruling was

correct; Reiner and Herrin were in court and no demand was made for the production of the telegram; the authorities cited by appellant are not in point. Moreover, the telegram is in the record and we cannot see its materiality; certainly the ruling excluding it, even if erroneous, was not of importance enough to warrant a new trial.

A large number of exceptions are founded upon rulings of the court sustaining objections to various items of evidence offered by plaintiffs not as directly pertinent to any issue in the case, but for the purpose, as plaintiffs' counsel stated, of showing that the parties by certain of their acts had construed certain things that were in the contract of May 20th—and, indeed, other things that were not in it. We do not think it necessary to state here this mass of offered testimony; it is sufficient to say that it was irrelevant to any issue in the case, and could not properly have worked its way into the evidence under the garb of the general purpose indicated.

We do not deem it necesary to notice specially the other exceptions. There were either no errors in the rulings, or the matters involved were too unimportant to have been prejudicial to the appellants. There was also an objection that the court did not find upon all the issues; but assuming for the purposes of this case that this point can be raised on this appeal, we think that the court found all the facts involved in the issues. Of course, as before stated, we cannot consider whether the judgment is the proper logical conclusion from the findings.

The appeal from the judgment is dismissed, and the order appealed from is affirmed.

Lorigan, J., and Henshaw, J., concurred.

Hearing in Bank denied.