[L. A. No. 3406. Department Two.—March 20, 1915.]

## JOHN A STANWOOD et al., Appellants, v. J. M. CARSON et al., Respondents.

APPEAL FROM JUDGMENT—TIME FOR TAKING.—An appeal from a judgment taken more than six months after its entry is too late and will not be considered.

PRACTICE—EVIDENCE—FAILURE TO PASS UPON RESERVED RULINGS.—The practice of deciding a case without in terms declaring upon reserved rulings touching the admissibility of evidence is to be reprobated and deplored. In some cases it may work substantial injustice to a litigant, and where it can be shown that such a result follows, the error is of sufficient gravity to call for a reversal.

STREET ASSESSMENT—STIPULATION AS TO EVIDENCE—FAILURE TO RULE UPON OBJECTIONS—UNPREJUDICIAL IRREGULARITY.—In this action for the annulment of certain street assessment proceedings, which was tried upon a stipulated statement of the evidence containing numerous objections by the plaintiffs to its admissibility, which involved the consideration of questions of law touching the legality and regularity of the assessment proceedings, and which questions of law were resolved against the plaintiffs' contentions in the conclusions of law which the court made determining that the assessments constituted valid liens against the plaintiffs' property, it is held, that in reaching such conclusion, the court must of necessity have overruled plaintiffs' objections to the introduction of such record evidence, and that its failure to formally pass upon the specific objections raised by the plaintiffs was without prejudice to them, as

all of the evidence which either party could have introduced upon any of the issues was introduced.

ID.—STIPULATION EMBRACING ALL OF EVIDENCE—FINDINGS UNNECESSARY —CONCLUSION OF LAW.—In such action, where the stipulation embraces all of the evidence, specific findings upon that evidence are not necessary. The conclusion of law that the assessments were valid is itself a determination of the ultimate fact.

ID.—NEWSPAPER—PRINTING ESTABLISHMENT SITUATED ON BOUNDARY LINE OF DIFFERENT CITIES—SUFFICIENT PUBLICATION OF NOTICES.— Where the newspaper in which the notices of the street improvement were published was widely circulated in the city where the work was to be done, the mere fact that the building in which the paper was printed was situated on the boundary line between that city and an adjoining city, the presses being situated in the former and the offices and editorial room in the latter place, did not invalidate the publications of the notices.

ID.—AWARD OF CONTRACT—THREE-FOURTHS VOTE OF TRUSTEES—APPROVAL BY PRESIDENT.—An award of the contract for the work, made by a three-fourths vote of the board of trustees, is not required to contain the approval of the president of the board.

ID.—RESOLUTION OF AWARD—CERTIFICATE OF CITY CLERK UNNECESSARY. The Street Improvement Law does not require that the resolution of award should bear the certificate of the city clerk. The validity of street improvement proceedings, unless some particular form of proof is made mandatory by law, does not depend upon whether or not proof was made a matter of record, but upon the fact that due notices and awards were in fact properly made.

ID.—EXTENSIONS OF TIME FOR WORK—CERTIFICATION OF CITY CLERK UNNECESSARY.—Extensions of time for doing the work awarded by the trustees are not rendered inoperative by the failure of the city clerk to certify them, notwithstanding the resolutions granting the extensions provided that "the city clerk shall certify to the passage of this resolution, and shall thereupon notify the street superintendent of the said extension of time."

ID.—SUSTAINING APPEAL TO CITY COUNCIL—COMPLETION OF WORK IN TIME ORDERED.—Where upon appeal to the city council it was decreed that the work had not been performed in accordance with the requirements of the contract, and further work was ordered to be done within a fixed time, and it was so done, the work must be deemed to have been completed within the time limited by the contract and its legal extensions.

ID.—DEMAND FOR PAYMENT AFTER ASSIGNMENT BY CONTRACTOR.—A demand for the payment of the assessment, is not invalidated because made by the original contractor after he had made an assignment thereof.

ID.—METHOD OF ASSESSMENT AFTER SUSTAINING APPEAL.—After an appeal from the acceptance of street work has been sustained by the

city council, and thereafter the work has been completed to its satisfaction and according to its order, the assessment therefor may be made by the proper reissue by the superintendent of streets of the old assessment, diagram, and warrant.

ID.—PROVISIONS OF SPECIFICATIONS NOT INVALIDATING CONTRACT.—The contract for the street work is not invalidated because the specifications contains a provision requiring the contractor "to dig all stake holes and preserve all stakes for the lines, levels, or measurements of the work in their proper places, until authorized to remove them by the city engineer"; or a like provision declaring that the contractor "shall not disturb any monuments or stakes until ordered to do so by the engineer," or a provision that "all loss or damage arising from any unforseen obstruction or difficulty which may be encountered in the prosecution of the work, or from the action of the elements, shall be sustained by the contractor."

ID.—DESCRIPTION IN ASSESSMENT—REFERENCE TO DIAGRAM.—*Hewes* v. *Reis*, 40 Cal. 261, followed, to the effect that the description in the assessment may be helped out by a reference to the attached diagram, and that its sufficiency is to be tested by a construction of both documents. On the authority of that case the description in the present case is held sufficient.

ID.—PROPERTY OWNERS CANNOT TAKE MORE THAN ONE APPEAL TO CITY COUNCIL.—Where an appeal by disaffected property owners to the board of trustees against an acceptance of the work is sustained, and the contractor is ordered to and does further specified work in accordance with the contract, to the satisfaction of the board, and the work is then accepted by it, the trustees have no jurisdiction to entertain another appeal by the property owners against the acceptance.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order refusing a new trial. N. P. Conrey, Judge.

The facts are stated in the opinion of the court.

Haas & Dunnigan, Charles S. Burnell, Kemper B. Campbell, and Frank P. Doherty, for Appellants.

Arthur M. Ellis, for Respondents.

HENSHAW, J.—This action was brought by certain property owners in the city of Ocean Park to secure a decree declaring null and void the proceedings under which Lake Avenue in that city was improved. Plaintiffs seek to remove the cloud cast upon their respective titles by the assessments upon their properties for the work done. The

trial was had upon a stipulated statement of the evidence, most of which consisted of the records of the proceedings on file in the office of the city clerk of Ocean Park. In certain instances the stipulation touching the evidence bearing upon a given matter was coupled with an objection by plaintiffs to the admissibility of this evidence. The trial court in its decision declared as follows:

"The court herewith makes its findings of fact and conclusions of law as follows:

## " FINDINGS OF FACT.

"(1) That a stipulation in writing was entered into by the parties in this action concerning the facts involved and the issues raised by the pleadings, which stipulation was and is in the words and figures the following, to wit:"

The whole of the stipulation of the parties, including their objections to the admissibility of certain portions of the evidence is then set forth *in extenso*. Then, so declares the court, "As conclusions of law from the foregoing facts found, the court finds" that each of the assessments is valid and is a valid lien upon the respective lots against which it is levied.

Judgment for defendants followed accordingly. Plaintiffs appeal from the judgment and from the order denying their motion for a new trial. The appeal from the judgment was taken too late, more than six months having elapsed between the entry of the judgment and the date of the appeal taken. That appeal, therefore, is not entitled to consideration. (*Henry* v. *Merguire*, 111 Cal. 1, [43 Pac. 387]; *Brownlee* v. *Reimer*, 147 Cal. 641; [82 Pac. 624].)

The first proposition advanced is that the order must be reversed for the failure of the court to rule upon the objections to the admission of evidence and to make any findings of fact whatsoever. To illustrate the first of these contentions, it is shown that the stipulation is to the effect, "That it may be considered that E. A. DeCamp, a witness for the defendants, being duly sworn, would testify as follows, and that said statements may be considered as in evidence subject to the objection of plaintiffs that they are incompetent, irrelevant, and immaterial. Again it is stipulated that copies of the *Evening Journal,* issued during the period involved in these street proceedings, "purported to be published in Ocean Park and bore the following head-

ings, '*Evening Journal*,' and under that, 'The Official Paper,' and under that, 'Ocean Park, Cal.' followed by the date of the paper. But that plaintiffs object that such facts are incompetent, irrelevant, and immaterial and are declarations made by one not a party to the action." The stipulation contains numerous other declarations of evidence, accompanied by like objections upon the part of plaintiffs to its admissibility. Upon no one of these objections did the court make a distinct ruling. For its failure so to do it is insisted that a new trial should be granted, and such cases as *Mayo* v. *Mazeaux,* 38 Cal. 442; *City of Stockton* v. *Dunham,* 59 Cal. 609, and *Raymond* v. *Glover,* 122 Cal. 471. [55 Pac. 398], are relied on. It is true, and always has been, that the practice of deciding a case without in terms declaring upon reserved rulings touching the admissibility of evidence is a practice to be reprobated and deplored. In some cases it may work substantial injustice to a litigant. In any case where it can be shown that such a result follows, the error is of sufficient gravity to call for a reversal. But it does not follow that injury is worked in every such case, and it is quite plain that it is not worked in the present case. It may be assumed as being the assumption of greatest benefit to appellants, and as being borne out by the decision which the court reached and expressed in its conclusions of law and judgment, that every one of plaintiffs' objections was overruled. The next matter for consideration is whether any of them of material consequence to plaintiffs' case was erroneously overruled, and, finally, whether by this method plaintiffs were denied the opportunity of introducing other evidence to meet, rebut, and overcome the evidence to the admission of which they objected. But it would unduly and unnecessarily prolong this consideration to discuss at length all of the objections advanced by plaintiffs to the admission of evidence. For the most part the evidence was record evidence. The objections were all founded upon the contention that for various omissions and irregularities this record evidence was inadmissible and void. Thus the stipulation declares, "That it may be considered that defendants have put in evidence the original of the reissued assessment, warrant and diagram, all, however, subject to plaintiffs' objection that it is irrelevant, immaterial, and incompetent; that there is no showing that the warrant after its alleged reissue

was ever recorded, etc.'' Again plaintiffs alleged that the assessment was invalid because it did not describe in any way the pieces and lots of land upon which it was supposed to be levied. It is here apparent that these objections directed against the admissibility of evidence really involve the consideration of questions of law,—namely, the legality and regularity of the proceeding, which questions of law were resolved against the contention of plaintiffs in the conclusions of law which the court made, the essential conclusion being that the assessments constituted valid liens against plaintiffs' property. To reach this conclusion the court necessarily must have considered these proceedings and the record of them to be valid. It must, therefore, of necessity have overruled plaintiffs' objection to the introduction of these records. We may reserve for later consideration the legal questions presented by these objections, and conclude this branch of the discussion by saying that, assuming the rulings to have been correct, plaintiffs were not injured. Their case is quite different from that of *Raymond* v. *Glover*, 122 Cal. 471, [55 Pac. 398]. There it happened, as it may sometimes happen, that the evidence to the admission of which objection was made, was of such character that if the objection was overruled the objecting party might be compelled, and should have the right, to meet it by rebuting evidence. And so in *Raymond* v. *Glover*, it was declared: ''that in the present case appellant, if advised by a decision of the court admitting the evidence, might have rebutted such evidence.'' No such situation is here before us. All of the evidence which either party could introduce upon any of the issues was introduced, and therefore we repeat, considering the court's action as being a ruling in each instance against plaintiffs' objection, they were not injured, unless some one or another of those rulings was erroneous upon an issue vital to their cause, which matter will meet with consideration hereafter.

Much of what has been said is applicable to the second proposition advanced by plaintiffs,—namely, that the court failed to find upon any of the matters in issue; that the stipulation was but an evidentiary stipulation, and that it was still incumbent upon the court to weigh the evidence and declare by its findings the result of such weighing,—namely, the proof or absence of proof. But here again it is to be

remembered that all of the evidence is in the stipulation; that the questions presented at the trial, while in a sense questions of fact, were questions of fact precisely as the construction and meaning of a contract is a question of fact. It is a question of fact mixed with and determinable upon more or less intricate questions of law. Thus, to illustrate by one example, plaintiffs alleged that the so-called assessment was invalid for the reason that it did not in any way describe the pieces or lots of land upon which it purported to be levied. This was denied. The stipulation sets forth what is agreed to be a correct copy of the assessment in so far as the assessment describes or attempts to describe the property. The complaint is made that the court did not in terms find whether the assessment did so describe the property. But what was the court called upon to do? It was called upon to inspect and analyze the assessment, and, applying to this inspection and analysis the governing principles of law, finally to declare as a fact that the assessment did or did not do this thing. The conclusion which the court would reach, while it may be described as a finding of fact, manifestly was the determination of a mixed question of law and fact. What the court did do in its conclusions of law was to sustain the assessment as constituting a valid lien, and in so doing necessarily to determine and declare that the property was sufficiently described. But we need not elaborate further upon this matter, for it is well settled that where a stipulation embraces all of the evidence, specific findings upon that evidence are not necessary. The conclusion of law that the assessments were valid is itself a determination of the ultimate fact. The matter is satisfactorily and conclusively disposed of by such cases as *Gregory* v. *Gregory,* 102 Cal. 50, [36 Pac. 364] ; *Mueller* v. *Rowell,* 110 Cal. 318, [42 Pac. 804] ; and *Hellman* v. *Shoulters,* 114 Cal. 136, 155, [44 Pac. 915, 45 Pac. 1057]. Indeed, in *Gregory* v. *Gregory* it is aptly said that the order denying plaintiffs' motion for a new trial cannot be reviewed, because a new trial is a re-examination of an issue of fact, and "in this case all of the facts were agreed upon. There was no issue of fact to be re-examined, the only question being as to what was the law applicable to those facts." Were it not for the circumstance that plaintiffs' objection to the admissibility of certain of this evidence

still remains to be considered, this discussion could be ended
here.

To that consideration we now come. It is not questioned
but that the notices by the Vrooman Act required to be pub-
lished were in fact published. The newspaper in which they
appeared was printed in a building on the boundary line be-
tween the cities of Santa Monica and Ocean Park. That
boundary line went directly through the printing office.
The presses were situated in Ocean Park. The front office
and editorial room and business office were situated in Santa
Monica. The paper was entitled the *Evening Journal,* was
designated as the official paper of Ocean Park, and purported
to be published in Ocean Park. Appellants' contention is
that the presses being situated in Ocean Park, the paper was
of course there printed; that ''publication'' as used in the
act means the precise place from which the paper is initially
issued for circulation. Thus it is contended that the place
from which this paper was issued for circulation, that is to
say was published, was not from the press room in Ocean
Park, but from the business offices across the imaginary line
and in Santa Monica. There is no manner of doubt but that
the paper in question was circulated, and widely circulated,
in Ocean Park. Having in mind the purpose to be effected
by the law, we hold appellants' view of the word ''publica-
tion'' as used in the statute to be entirely too narrow. It is
quite as rational to say, since the fact is that the circulation
and distribution of the paper was in the city of Ocean Park,
that the publication which followed the printing came im-
mediately from the press rooms in Ocean Park. It is wholly
unnecessary to picture the physical transportation of these
papers from the press in Ocean Park across the imaginary
line into the business offices, and a primary publication being
made in another room in the same building, to the end of
defeating the plain purpose of the law. We will not review
the authorities. None upholds plaintiffs' contention; while
to the contrary the general principle is well established that,
the vital consideration being notice by publication, such pub-
lication is the publication contemplated by law, with little
or no regard paid to the mere place of printing, even when
the word ''printing'' coupled with publication is embraced
in the statutory requirement. (*State* v. *Hoboken,* 44 N. J. L.
131; *Ricketts* v. *Hyde Park,* 85 Ill. 111; *Brown's Estate* v.

*West Seattle,* 43 Wash. 26, [85 Pac. 854]; *Hinchman* v.
*Barnes,* 21 Mich. 558; *Greenlee* v. *Marks,* 62 Ind. 420; *Hart*
v. *Smith,* 44 Wis. 229.) The objection to the introduction
of the evidence upon this matter was, therefore, properly
overruled, and the legal question involved as to the regular-
ity of the publication in a properly authorized journal was
correctly decided in defendants' favor.

The award was by a three-fourths vote of the trustees. This
award did not contain the approval of the president of the
board. But having been made by three-fourths of the board
of trustees the approval of the president was not necessary.
(*McDonald* v. *Dodge,* 97 Cal. 112, [31 Pac. 909]; *Greenwood*
v. *Morrison,* 128 Cal. 350, [60 Pac. 971]; *Clarke* v. *Jennings,*
(Cal.), 32 Pac. 1049.)

To the objection of appellants that the resolution of award
is insufficient because it did not bear the certificate of the clerk,
suffice it to say that the law does not require such certificate.
To this and other like objections it may be answered in the
language of *Hellman* v. *Shoulters,* 114 Cal. 136, [44 Pac. 915,
45 Pac. 1057], that the validity of the procedure, unless made
mandatory by law, does not depend upon whether or not proof
was made a matter of record, but upon the fact that due
notices and awards were in fact properly made.

Extensions of time were awarded by the trustees. The ob-
jection to these extensions is that they were not certified to
by the city clerk. The phraseology of each resolution was
that "The city clerk shall certify to the passage of this resolu-
tion, and shall thereupon notify the street superintendent of
the said extension of time." But this form of certification
and this form of notification were not of the essence of the
extensions. Similar contentions upon like questions have been
reviewed by this court and uniformly held untenable. (*Oak-
land Paving Co.* v. *Barstow,* 79 Cal. 49, [21 Pac. 544]; *Gay* v.
*Engebretsen,* 158 Cal. 25, [139 Am. St. Rep. 67, 109 Pac.
876].) The authorities cited by appellants are cases where the
power to order a publication is vested with the board, and
where, therefore, the publication itself is without validity,
unless so ordered, and consequently a publication ordered by
a clerk without authority from the board is nugatory. Of
this character of cases are *Donnelly* v. *Marks,* 47 Cal. 187;
*Donnelly* v. *Tillman,* 47 Cal. 40; *Himmelmann* v. *Townsend,*
49 Cal. 151; *Himmelmann* v. *Satterlee,* 49 Cal. 387, and *Napa*

v. *Easterby,* 61 Cal. 509.   Of like character is *Chase* v. *City Treasurer,* 122 Cal. 545, [55 Pac. 414], where the statute required a publication in a paper designated by the council.   It was held to be a nondelegable duty of the council so to designate the paper, and it had not done so.   These cases, of course, have no bearing upon the question here presented, where extensions of time became operative by action of the council duly made and the irregularity, if it can be said that it rises even to the dignity of an irregularity, was occasioned by a failure to observe the formal method indicated for giving notice that such extensions had been made.

Appellants' contention that the work was not completed in time arises from the following facts: Upon appeal to the council it was decreed that the work had not been performed in accordance with the requirements of the contract, and further work was ordered to be done within a fixed time.   It was so done.   Appellants' contention is that because of the failure to complete it to the satisfaction of the council within the original period covered by the contract and its legal extensions it was never fully performed within the meaning of the law, and the assessments are therefore void.   This matter is fully disposed of against appellants' contention in *Hadley* v. *Dague,* 130 Cal. 207, [62 Pac. 500].   In like manner appellants' argument that a demand could not be properly made by the contractor, Mr. Mulherron, because he had made an assignment, is answered by *Taylor* v. *Palmer,* 31 Cal. 240, that the property owners are not concerned over this matter.   The method followed by the street superintendent in making the assessment in this case is that approved in *Creed* v. *McCombs,* 146 Cal. 449, [80 Pac. 679].   The uncontradicted facts stipulated show that the old assessment, diagram, and warrant were properly reissued by the superintendent of streets.

Certain provisions in the specifications, it is contended, render the contract invalid.   Thus the contractor was required "to dig all stake holes and preserve all stakes for the lines, levels, or measurements of the work in their proper places, until authorized to remove them by the city engineer."   This, it is contended, was an onerous provision, giving room for the play of oppression upon the one hand and favoritism upon the other; that an unfriendly city engineer could thus unduly burden and oppress the contractor in his work.   A like provision is found, declaring that the contractor shall not disturb

any monuments or stakes until ordered to do so by the engineer. Another is that all loss or damage arising from any unforeseen obstruction or difficulty which may be encountered in the prosecution of the work, or from the action of the elements, shall be sustained by the contractor. It is said that these specifications come within the condemnation of *Blochman* v. *Spreckels,* 135 Cal. 664, [57 L. R. A. 213, 67 Pac. 1061]; *Grant* v. *Barber,* 135 Cal. 188, [67 Pac. 127]; *Wollacott* v. *Meekin,* 151 Cal. 701, [91 Pac. 612]; *Stansbury* v. *Poindexter,* 154 Cal. 709, [129 Am. St. Rep. 190, 99 Pac. 182]; and *True* v. *Fox,* 155 Cal. 534, [102 Pac. 263]. No good purpose would be subserved by an elaborate analysis of these cases. The early tendency toward a rigid strictness in these matters which has found expression in some of the cases, such as *Blochman* v. *Spreckels,* 135 Cal. 664, [57 L. R. A. 213, 67 Pac. 1061], has been much relaxed by later decisions, and wisely so, because it became apparent that a strict enforcement of the street law to its very letter often resulted in depriving street contractors, who had honestly performed their work, of their just compensation. The inevitable result was that subsequent contracts would not be undertaken by such contractors owing to the hazard arising from such strict construction, excepting at largely increased prices, and in consequence, while in an individual case a property owner might through some technicality escape paying what he should in equity have paid, property owners generally would be compelled to pay excessive prices because of the imminent peril of total loss which confronted contractors. So we may say generally that no reason appears, or is shown, why the inhibition against removing stakes and monuments, without the consent of the city engineer, is unduly oppressive. There is the presumption that this officer will perform his duty. There is reason for such provision, in that the engineer and street superintendent may have an opportunity to see that the work is properly done to grade. For the other objections touching the burden cast upon the contractor to bear the loss due to the nature of the work and the action of the elements, it is sufficient to refer to *Gay* v. *Engebretsen,* 158 Cal. 23, [139 Am. St. Rep. 67, 109 Pac. 876]; *McQuiddy* v. *Worswick Paving Co.,* 160 Cal. 11, [116 Pac. 67], and *Haughawout* v. *Raymond,* 148 Cal. 311, [83 Pac. 53], where similar and in some instances the precise specifications are upheld. The objection that the city engineer is given dis-

cretion is answered by the case of *McCaleb* v. *Dreyfus,* 156 Cal.
209, [103 Pac. 924], where this court points out that after the
exercise of the engineer's discretion the work must still be
inspected and approved by the street superintendent. The
description in the assessment was sufficient, the assessment be-
ing in this respect similar to that in *Hewes* v. *Reis,* 40 Cal. 261,
and the objection to this assessment being answered by what
is said in that case.

In September disaffected property owners appealed to the
board of trustees against an acceptance of the work, alleging
improper and faulty construction. This appeal was sustained
and the street contractor was ordered to do additional, definite,
and specified work in accordance with the contract. This the
contractor did, and in December the street superintendent and
an expert inspector reported to the board that the work had
been fully completed in accordance with the contract and
specifications, and recommended an acceptance of the work.
Following this the board took action, finally accepting the
street. Thereafter disaffected property owners filed a second
appeal, which at first the board of trustees showed a disposi-
tion to hear. Later, the board advised by its attorney that it
had no authority to consider this subsequent appeal, it was
formally overruled and disallowed. Section 11 of the Vroo-
man Act contemplates just such an appeal as was taken by the
disaffected property owners in September. Their appeal went
to the character of the work, and the board of trustees in sus-
taining their appeal ordered that the work be completed in
accordance with the contract. This was done and thereafter,
upon due report made to the trustees that it had been done,
they finally accepted the work and the street. Section 11 of
the Vrooman Act itself declares that "all the decisions and
determinations of said city council . . . shall be final and
conclusive upon all persons entitled to appeal." The law
nowhere contemplates successive appeals, and the general prin-
ciple is that where special jurisdiction of this character is con-
ferred upon a board or tribunal, when it has once finally exer-
cised that jurisdiction all further powers over the matter are
at an end. (*Belser* v. *Hoffschneider,* 104 Cal. 461, [38 Pac.
312].) Appellants therefore have no just complaint over the
refusal of the board of trustees to entertain their second
appeal.

The foregoing disposes of all the matters arising under the objections of appellants to the admission of evidence.   It appears herefrom that their objections were properly overruled.

The order appealed from is therefore affirmed.

Lorigan, J., and Melvin, J., concurred.